UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

HEREDITARY CHIEF WILBUR
SLOCKISH, a resident of Washington and an
enrolled member of the Confederated Tribes
and Bands of the Yakama Nation, *et al*,                    Case No. 3:08-cv-1169-ST

             Plaintiffs,                    FINDINGS AND
                                  RECOMMENDATION

   v.

UNITED STATES FEDERAL HIGHWAY
ADMINISTRATION, an Agency of the
Federal Government, *et al*,

             Defendants.


STEWART, Magistrate Judge:

## **INTRODUCTION**

      This case involves the U.S. Highway 26 Wildwood-Wemme highway widening project

("Wildwood-Wemme Project") near Mt. Hood, Oregon, which was substantially completed in

2008.  Plaintiffs consist of three Native Americans (Hereditary Chief Wilbur Slockish, Chief

Johnny Jackson, and Carol Logan) and two organizations (Cascade Geographic Society ("CGS")

and Mount Hood Sacred Lands Preservation Alliance ("MHSLPA")) who seek to preserve,

protect, and rehabilitate Native American sacred and cultural sites and historical and archaeological resources in the lands surrounding Mount Hood.

Plaintiffs allege that defendants United States Federal Highway Administration ("FHWA"), United States Bureau of Land Management ("BLM"), Advisory Council on Historic Preservation ("ACHP"), and Matthew Garrett ("Garrett"), the Director of the Oregon Department of Transportation ("ODOT"), violated the following federal laws:

(1) National Historic Preservation Act, 16 USC §§ 470-470x-6 ("NHPA");

(2) Federal Land Policy and Management Act, 43 USC §§ 1701-85;

(3) Archaeological Resources Protection Act, 16 USC §§ 470aa-470mm;

(4) Native American Graves Protection and Repatriation Act , 25 USC §§ 3001-13 ("NAGPRA");

(5) National Environmental Policy Act, 42 USC §§ 4321-4347 ("NEPA");

(6) § 4(f) of the Department of Transportation Act, 49 USC § 303 and 23 USC § 138; and

(7) Administrative Procedures Act, 5 USC §§ 701-706 ("APA").

They also allege that defendants violated both the due process clause of the Fifth Amendment and the free exercise of religion clause of the First Amendment to the United States Constitution, as well as the public trust doctrine.

///

///

///

**PROCEDURAL HISTORY**

2 - FINDINGS AND RECOMMENDATIONS

Plaintiffs commenced this action on October 6, 2008, and filed their First Amended Complaint on February 3, 2009 (docket #3).   Defendants filed a motion to dismiss, which was granted in part without prejudice as to the public trust doctrine, due process, and breach of fiduciary duty claims alleged by plaintiffs Slockish, Jackson, the Klickitat Tribe, and the Cascade Tribe (dockets #48 and #52).   Plaintiffs then filed a Second Amended Complaint ("SAC") on June 16, 2010 (docket #64).   The Federal Defendants (FHWA, BLM, and ACHP) lodged the Administrative Record on October 28, 2010, filed sealed portions on November 18, 2010 (docket #86), and, after plaintiffs identified missing documents, filed a supplement on March 7, 2011 (docket #91).[1]   Because the supplement did not adequately address all of their concerns, plaintiffs filed their first Motion to Supplement Record and to Compel Discovery (docket #92) on March 29, 2011, which was denied as premature (docket #101).

The Federal Defendants then filed a Motion for Judgment on the Pleadings (docket #105) against the SAC as to the constitutional claims (Twelfth and Thirteenth Claims) and the public trust doctrine (Fourteenth Claim).   Garrett also filed a Motion for Judgment on the Pleadings (docket #106) based, in part, on immunity under the Eleventh Amendment.   Plaintiffs filed a Renewed Motion to Supplement the Record and to Compel Discovery based on defendants' duties to complete an inventory and to consider information from individual tribal members (docket #107).

On September 21, 2011, I issued Findings and Recommendations on all three motions (docket #122).   Judge Brown adopted my recommendations as to two motions (docket # 131).

---

[1]   The Administrative Record contains records from the Federal Defendants.   References to this record will note the

As a result, the Federal Defendants' Motion for Judgment on the Pleadings was:   (1) granted as to those portions of the Twelfth Claim (due process violation) based on the rights to travel, freely associate, and maintain and express traditional culture and as to the Fourteenth Claim (violation of the public trust doctrine); and (2) denied as to the portion of the Twelfth Claim (due process violation) premised on the right to freely exercise religion and the Thirteenth Claim (interference with free exercise of religion).   In addition, Garrett's Motion for Judgment on the Pleadings was granted, and Garrett was dismissed.

In the third motion (docket #107), plaintiffs seek to supplement the record with affidavits and testimony to establish affirmatively their own cultural and religious use and interest in the Wildwood-Wemme Project site, as well as the specific liberty and religious interests alleged in the Twelfth and Thirteenth Claims.   In addition, they seek the opportunity to submit evidence and take depositions of witnesses in order to rebut conclusions and assertions made by defendants and to fill gaps in the Administrative Record regarding the procedural and substantive adequacy of the consultation by the Federal Defendants with Native American tribes. I recommended denying that motion as to the alleged duty to inventory (First Claim) based on the bad faith exception and granting the motion as to the alleged duty to consult under the NHPA and NAGPRA (Third Claim).   Because the duty to consult necessarily involves discovery of the religious importance of the site to plaintiffs, I concluded that the issue of discovery on the

---

source of the record and the page number.

constitutional claims need not be resolved.   Judge Brown referred that motion back to me to specifically to resolve the following two issues:[2]

(1)   Under the NHPA, "a substantial issue remains as to whether Plaintiffs have standing to seek supplementation of the record and discovery as to Federal Defendants' consultation with other federally-recognized tribes, including the Warm Springs Tribe, relating to the road-widening project;" and

(2)   Under the NAGPRA, "in the absence of any actual discovery or excavation of human remains and objects on [the Project] lands, Federal Defendants may not have had a duty to engage in consultation with Plaintiffs."

To resolve those issues, I heard oral argument (docket #137) and received supplemental briefing from the parties (dockets ## 138, 141, &145-48).

## FINDINGS

### I.   Discovery Under the APA

Under the APA, judicial review of an agency decision is generally limited to the administrative record on which the agency based the challenged decision.   *Lands Council v. Powell*, 395 F3d 1019, 1029 (9th Cir 2005).   As explained by the Supreme Court, "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'"   *Florida Power & Light Co. v. Lorian*, 470 US 729, 743-44 (1985), quoting *Camp v. Pitts*, 411 US 138, 142 (1973).

---

[2] Plaintiffs' pending motion (docket #107) is not a dispositive motion.   However, due to the past history of this motion and referral by Judge Brown, I will issue Findings and Recommendations rather than an Opinion and Order.

Expansion of the administrative record is allowed in only four narrowly construed circumstances:   "(1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency."   *Fence Creek Cattle Co. v. United States Forest Serv.*, 602 F3d 1125, 1131 (9th Cir 2010) (citations and quotations omitted).

In the Ninth Circuit, when claims are brought under the NEPA, the first of these four circumstances allows expansion of the record to consider whether the agency "neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative or otherwise swept stubborn problems or serious criticism . . . under the rug." *Animal Defense Council v. Hodel*, 840 F2d 1432, 1437 (9th Cir 1988) (citation and quotations omitted).   In NEPA cases, "a primary function of the court is to insure that the information available to the decision-maker includes an adequate discussion of environmental effects and alternatives, which can sometimes be determined only by looking outside the administrative record to see what the agency may have ignored."   *Id* (citations omitted).

## II.   <u>Failure to Consult (Third Claim)</u>

As amended, the Third Claim alleges that the Federal Defendants violated the NHPA because they "failed to engage in adequate formal consultation" with three federally recognized Indian tribes (Confederated Tribes and Bands of the Yakama Nation, Warm Springs, and Grande

Ronde)[3] and with plaintiffs as "interested parties" regarding all aspects of the
Wildwood-Wemme Project, "including but not limited to inventory, determination of eligibility
for and inclusion in the National Register of Historic Places, taking into account the effects of
the undertaking and mitigation strategies."  SAC, ¶¶ 60-62.  The Federal Defendants dispute
that they owe plaintiffs this duty to consult and argue that, in any event, they complied with that
duty.

Plaintiffs move to supplement the record to show they have standing to assert this claim
and also to obtain discovery to explain agency decision-making or to fill gaps in the record.

A.  **NHPA**

The NHPA has been characterized as a "stop, look and listen" provision.  *Apache
Survival Coalition v. United States,* 21 F3d 895, 906 (9th Cir 1994).   It requires that, prior to any
federal undertaking, the relevant federal agency must "take into account the effect of the
undertaking on any district, site, building, structure or object that is included in or eligible for
inclusion in the National Register" and "afford the [ACHP] . . . a reasonable opportunity to
comment with regard to such undertaking."   16 USC § 470f.   This is commonly referred to as
the "section 106 process."   To fulfill that obligation, the ACHP has issued regulations
implementing NHPA.   36 CFR Part 800.   These regulations require a federal agency to consult
with certain specified parties to identify historic properties, assess the adverse effects of the
proposed project on those historic properties, and avoid or mitigate any adverse effects.   The

---

[3]  The Third Claim alleges only a failure to engage in adequate formal consultation with the Yakama Nation.   SAC,
¶ 60.   However, that allegation was made before lodging of the Administrative Record.   At oral argument, plaintiffs
sought leave to amend to add a failure to consult with the Warm Springs and Grande Ronde tribes which I granted.

section 106 process may be conducted in conjunction with an environmental review under NEPA, as was done in this case.   36 CFR § 800.1(a).

The regulations identify two classes of intended participants ("interested parties") in the section 106 process.   The first class is "consulting parties."   According to 36 CFR § 800.2(a)(4), the agency "*shall* involve the consulting parties described in paragraph (c) of this section in findings and determinations made during the section 106 process" (emphasis added). "Consulting parties" are defined as including, among others, Indian tribes both with respect to tribal lands and historic properties of significance to Indian tribes "regardless of the location of the historic property."   36 CFR § 800.2(c)(2)(i) & (ii); *also see* 16 USC § 470a(d)(6)(B) (A federal agency "shall consult with any Indian Tribe . . . that attaches religious and cultural significance to properties.").   The regulation further provides that "[c]ertain individuals and organizations with a demonstrated interest in the undertaking *may* participate as consulting parties due to the nature of their legal or economic relation to the undertaking or affected properties, or their concern with the undertaking's effects on historic properties."   36 CFR § 800.2(c)(5)(emphasis added).   These individuals and organizations are referred to as "additional consulting parties."

The second class of "interested parties" is the "public."   36 CFR § 800.2(d).   In that regard, the agency owes a duty to:

> seek and consider the views of the public in a manner that reflects the nature and complexity of the undertaking and its effects on historic properties . . . . The agency must . . . provide the public with information about an undertaking and its effects on historic properties and seek public comment and input.   Members of the public may also provide views on their own initiative for the agency official to consider in decisionmaking.

8 - FINDINGS AND RECOMMENDATIONS

*Id.*

### B. <u>Standing</u>

The first issued referred by Judge Brown is whether plaintiffs have standing under the

NHPA to seek supplementation of the record as to the Federal Defendants' consultation with

other federally recognized tribes.   Plaintiffs Slockish and Jackson, who are enrolled members of

the Yakama Nation of Klickitat and Cascade ancestry, concede that they have no right to

consultation under the NHPA based on their Klickitat and Cascade ancestry.[4]   However, they

allege that they have standing as members of the public to assert a claim based on the Federal

Defendants' failure to consult with Indian tribes of which they are not members.   SAC, ¶ 60.

They also allege that they are entitled to standing as "additional consulting parties."   SAC, ¶ 61.

To satisfy Article III, a plaintiff must demonstrate that he or she has suffered injury in

fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will

likely be redressed by a favorable decision.   *Friends of the Earth, Inc. v. Laidlaw Envtl. Svcs.,*

528 US 167, 180-81 (2000).   In addition, to state a claim under the APA for violating a

---

[4] An Indian tribe is "recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians."  36 CFR § 800.16(m); *see also* 16 USC § 470w(4).   Consultation with Indian tribes, under the NHPA and other similar statutes, is a government-to-government consultation between the federal government and the governments of federally recognized Indian tribes.   *See Snoqualmie Indian Tribe v. F.E.R.C.*, 545 F3d 1207, 1215-16 (9th Cir 2008) (rejecting a NHPA claim by a tribe that became recognized two months after the decision issued); *Te Moak Tribe v. United States Dep't of the Interior*, 608 F3d 592, 608 n19 (9th Cir 2010) (holding that, under the NHPA, an agency must engage in government-to-government consultations only with recognized tribes and tribal representatives duly designated by the governing tribal body); *see also Idrogo v. U.S. Army*, 18 F Supp2d 25, 26 (D DC 1998) (finding that plaintiffs lacked standing on NAGPRA claim where plaintiffs did not meet the statutory definition of "Indian tribe").   The Klickitat/Cascade Tribe and Cascade Tribe are not on the list of all federally-recognized Indian tribes maintained by the Bureau of Indian Affairs.   "Indian Entities Recognized and Eligible to Receive Service from the United States Bureau of Indian Affairs," 75 Fed Reg 60,810. (October 1, 2010).   Consequently they have no right to consultation under section 106.   Plaintiffs contend that the Klickitat/Cascade and Cascade tribes are sub-tribes, or bands, within the federally recognized Yakama Nation.

9 - FINDINGS AND RECOMMENDATIONS

particular statute, a plaintiff must show that his or her injury falls within the "zone of interests" the statute was designed to protect. *Cantrell v. City of Long Beach,* 241 F3d 674, 679 (9th Cir 2001). The "zone of interests" test requires determining, first, which interests the statute protects and, second, whether the agency action affects those interests. *TAP Pharm v. United States Dep't of Health & Human Serv.*, 163 F3d 199, 203 (4th Cir 1998).

For a plaintiff who asserts a procedural injury, as in this case, the "injury in fact" requirement is met by showing that "the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Lujan v. Defenders of Wildlife,* 504 US 555, 573 n8 (1992). In that event, a plaintiff need not meet "the normal standards for redressability and immediacy." *Id* at 572 n7.

The Federal Defendants do not dispute that plaintiffs are members of the public and may submit affidavits and declarations to support their interest in and use of the site for the purpose of qualifying as "additional consulting parties" under the NHPA. Nonetheless, the Federal Defendants contend that as members of the public, plaintiffs have no standing to pursue a claim for violating the NHPA by failing to consult with an Indian tribe. They also contend that plaintiffs have no standing as "additional consulting parties" to pursue a claim under the NHPA by failing to consult with them.[5]

### 1.    Members of the Public

---

[5] Federal Defendants also argue that plaintiffs have no constitutional standing. However, they did not object to this court's Findings and Recommendations ("F&R") dated October 27, 2009, that Logan and MHSLPA had constitutional standing (docket #48, pp. 24-30). The Opinion and Order adopting that F&R refrained from ruling on

The NHPA requires the Federal Defendants to consult with any Indian tribe "that attaches religious and cultural significance to properties" affected by the Wildwood-Wemme Project.   16 USC § 470a(d)(6)(A) & (B).   According to the Federal Defendants, only Indian tribes, and not members of the public, have standing to allege a failure to comply with this consultation requirement.

One court has specifically addressed the issue of standing in this context.   In *Montana Wilderness Ass'n v. Frye*, 310 F Supp2d 1127 (D Mont 2004), an individual Native American plaintiff was an enrolled member of the Fort Peck Tribe.   He filed suit against the BLM and others for selling oil and gas leases and granting a pipeline right-of-way on land in a National Monument.   One of his claims alleged that the BLM violated the NHPA by failing to consult with the Rocky Boys and Fort Belknap tribes prior to selling the leases and after identifying an historic site in the area of the pipeline right-of-way.   The defendants contended that he lacked standing under Article III to bring such a claim under the NHPA because he was not a member of the Rocky Boys or Fort Belknap tribes.   However, the plaintiff filed an affidavit reciting that the area at issue is a traditional migratory route of his people, that he has and will continue to visit sites of traditional cultural significance in that area, and that BLM's failure to follow the NHPA procedures deprived him of his voice and input.   Noting that the NHPA's regulations "require federal agencies to provide interested members of the public reasonable opportunity to participate in the section 470f process," the court concluded that "any member of the public who can demonstrate sufficient interest in the preservation of the historical lands at issue falls within

_____

CGS's standing (docket #52).   Plaintiffs then filed their SAC which amended the allegations as to plaintiffs

the zone of interests protected by the NHPA." *Id* at 1151.  *Also see Winnemem Wintu Tribe v. United States Dep't of Interior,* 725 F Supp2d 1119, 1134 (ED Cal 2010) (finding that the leader of a non-federally-recognized Indian tribe has standing as a member of the public to sue under the NHPA for failing to consult).

Similarly, plaintiffs in this case are members of the public who claim an interest in the preservation of the historic sites at issue.   Thus, they, too, fall within the zone of interests protected by the NHPA and have standing to challenge the adequacy of the Federal Defendants' consultation with federally recognized tribes, including the Yakama Nation, Warm Springs and Grande Ronde tribes.   I am not persuaded by the Federal Defendants' efforts to distinguish *Frye* and reject their argument that plaintiffs lack standing as interested members of the public to pursue a claim against under the NHPA for failing to consult with an Indian tribe.

## 2.   **Additional Consulting Parties**

Plaintiffs also argue that by asserting their concern with the effect of the Wildwood-Wemme Project on historic properties, they qualify under the NHPA as "additional consulting parties" who "may participate as consulting parties" under 36 CFR § 800.2(c)(5). Even if the plaintiffs qualify as "additional consulting parties," the Federal Defendants respond that they fail to state a claim under the NHPA based on a failure to consult with them.

Pursuant to 36 CFR § 800.3(f), the federal agency, after first identifying the state and/or tribal historic preservation officers ("SHPO/THPO") and developing a plan to involve the public, must consult with the SHPO/THPO and "identify any other parties entitled to be consulting

---

Slockish and Jackson's allegations to mirror those of Logan.   Thus, this argument is untimely.

parties and invite them to participate as such in the section 106 process."   As part of that process:

> The agency official *shall consider all written requests* of individuals and organizations to participate as consulting parties and, in consultation with the SHPO/THPO and any Indian tribe upon whose tribal lands an undertaking occurs or affects historic properties, determine which should be consulting parties.

36 CFR § 800.3(f)(3) (emphasis added).

One appellate court has construed this regulation.   In *Mid States Coal. for Progress v. Surface Transp. Bd.*, 345 F3d 520, 553 (8th Cir 2003), ranchers and farmers whose lands may contain historic properties alleged that the agency failed to comply with section 106 of the NHPA by not inviting them to participate as "additional consulting parties."   The Eighth Circuit concluded that the ranchers and farmers "are not automatically entitled to be consulting parties," but under 36 CFR § 800.2(c)(5), due to their economic interest, "they may be added as consulting parties but they must first make a request in writing."   *Id*.   At least one district court has followed the Eighth Circuit's interpretation of the regulation.   *Friends of Hamilton Grange v. Salazar*, Case No. 08 Civ. 5220(DLC), 2009 WL 650262, at *11 n7 (SDNY March 12, 2009) ("To become a consultant, the party must request participation in writing and be granted consulting party status by the agency overseeing the undertaking.").

Plaintiffs claim a right to participate in the section 106 process as "additional consulting parties" because they had "previously demonstrated their interest" in the undertaking.   While plaintiffs may define themselves in this way, they failed to follow the process under section 106 to obtain this status.   None of the plaintiffs made a request in writing, and were not invited, to

be "additional consulting parties."   Thus, according to the Eighth Circuit and the unambiguous

wording of 36 CFR § 800.3(f)(3), plaintiffs have no standing as "additional consulting parties"

and cannot state a claim against the Federal Defendants under the NHPA for failing to consult

with them on that basis.

### 3.      Adequacy of Consultation

As discussed above, plaintiffs have standing as interested members of the public, but not

as "additional consulting parties," to allege a violation of the NHPA for failing to consult with an

Indian tribe or with them.   As interested members of the public, plaintiffs seek to supplement

the record in order to establish that the Federal Defendants failed to consider all factors in their

decisionmaking.   The Federal Defendants respond that such supplementation is unnecessary and

impermissible because the record reveals that they fully complied with any duty imposed under

the NHPA to consult with the Indian tribes and members of the public.

Plaintiffs point out that the Yakama Nation was not consulted before the Environmental

Assessment ("EA"), although evidence suggests that it had the greatest interest in the A. J.

Dwyer Scenic Area.   In 1991, the late Wilferd Yallup, then Chair of the Yakama Indian Nation,

provided testimony at a meeting with representatives from the Oregon Department of

Transportation ("ODOT") regarding, *inter alia*, the presence of Native American graves along

the U.S. 26 highway corridor.   FHWA AR 5565-5613.   In March 2008, after the Finding of No

Significant Impact ("FONSI") was issued, Michael Jones, Curator of CGS, submitted to the

Federal Defendants the transcript of this 1991 meeting.   The transcript refers to a map which

cannot be located.[6]   FHWA AR 5567.   Jones and attorney Michael Nixon attended that

deposition and are prepared to testify that Yallup indicated on the map that the Dwyer property

(later the A. J. Dwyer Scenic Area) was a location of Native American gravesites.   *See* FHWA

AR 5565-5613, 5321, 5333.   It is unknown whether ODOT communicated this information to

the Federal Defendants.   Plaintiffs also note that Dr. Thomas Connolly cited Yallup in his 1992

report to ODOT and should have knowledge regarding those Native American burial sites.

FHWA AR 2236-38, 5321 ("Mr. Yallap [*sic*] has also stated that human burials may be present

in the project vicinity."), 5333.

Plaintiffs contend that additional discovery will disclose the extent of knowledge by

ODOT and the Federal Defendants of Native American burial sites within the A. J. Dwyer

Scenic Area managed by BLM and the degree to which they acknowledged or ignored this

information in their decisionmaking.   Jones is prepared to testify about his meetings prior to

generation of the EA with officials of ODOT and FHWA in which he specifically mentioned

Slockish, Jackson, and Logan as individuals likely to have knowledge of, or concerns with the

Wildwood-Wemme Project, and identified issues relating to the undertaking's potential effects

on historic properties in the A. J. Dwyer Scenic Area.

It is undisputed that consultation with the Yakama Nation first occurred after the EA was

issued.   If the Yakama Nation qualified as a "consulting party," then this belated consultation

---

[6] At oral argument on the motion, the Federal Defendants represented that BLM has looked for, but not been able to locate, the map in its files.   In addition, at BLM's request, ODOT searched its records and has been unable to locate the map.   The transcript also reveals that the meeting was tape-recorded.   However, no search has yet been completed to find the tape recording.

15 - FINDINGS AND RECOMMENDATIONS

violated the section 106 process of the NHPA.   The Federal Defendants point to portions of the

record to support their contention that they had no reason to believe that the Yakama Nation had

any interest in the Project area.[7]   However, plaintiffs dispute that conclusion based, in part, on

Yallup's 1991 testimony.   Without the map, it cannot be determined what area Yallup

designated as containing Native American burial sites.   Since the map cannot be located,

plaintiffs should be allowed under the APA to supplement the record with testimony by Jones

and Nixon under the NEPA exception to determine if the Federal Defendants considered or

ignored all relevant factors.   Without this additional evidence, neither plaintiffs nor this court

can ascertain what knowledge was communicated by Yallup to ODOT and then either

communicated (or not) by ODOT or imputed (or not) to the Federal Defendants regarding the

Yakama Nation's interest.

Plaintiffs also challenge the adequacy of the Federal Defendants' consultation with the

Grande Ronde and Warm Springs tribes.   As one example, they point out that the Federal

Defendants met with the Warm Springs tribe, including "Tribal Elders" (FHWA AR 3180,

3798), but there is no record of what was discussed in these meetings.   They assert that knowing

what was discussed in these meeting is critical to their claim regarding the procedural and

substantive adequacy of the consultation with those tribes.   They also point to evidence from

1990 suggesting that two Warm Springs tribal members, Rip Lone Wolf and Larry Dick, had

---

[7] The record demonstrates that the Yakama Nation was not contacted earlier because the Oregon State Commission
on Indian Services initially suggested that the Yakama Nation had no interest in the Wildwood-Wemme Project area.
FHWA AR 2970, 6083-85.

recently visited the rock burial cairn within the A. J. Dwyer Scenic Area, which should have triggered the Federal Defendants to investigate that area as a Traditional Cultural Property. BLM AR 06-09.   Plaintiffs want answers to such questions as:   was the Wildwood-Wemme Project area discussed as a Traditional Cultural Property in the meetings referenced in FHWA AR 15, 3180, and 3798; what Tribal Elders met with the defendants; and what did these Tribal Elders say?

In response, the Federal Defendants point to evidence in the record revealing their extensive consultation with the Warm Springs, Grande Ronde and Siletz tribes.   *See* Federal Defendants' Response to Plaintiffs' Supplemental Memorandum (docket #141), Ex. A (timeline); FHWA AR 2609, 3062-64, 3178-80, 3828-32, 5674-75, 6512-23.   None of those tribes expressed any concerns with the proposed Wildwood-Wemme Project.   FHWA AR 5674-75, 6572-73.   The Grande Ronde tribe also had a tribal monitor on site when the tree removal commenced.   FHWA AR 5666, 5726-28, 5972-73.   After Logan (a member of the Grande Ronde tribe) raised concerns, her tribe stated that she did not speak for it, that it was satisfied with the section 106 process, and that her views should not be confused with its views. FHWA AR 5652, 6910-11; *see* 36 CFR § 800.2(c)(2) ("[T]he agency official shall consult with a representative designated by such Indian tribe . . .").   After Slockish and Jackson raised concerns, the Federal Defendants also consulted with the Yakama Nation, albeit late in the section 106 process.   *See* Federal Defendants' Response to Plaintiffs' Supplemental Memorandum (docket #141), Ex. B (timeline).

This issue boils down to what information must be conveyed by the Federal Defendants to the tribes to satisfy the duty to consult.    Plaintiffs contend that the agency bears the burden of affirmatively communicating all information in its possession, including the possibility of burial sites, to the tribes for their review and comment.    They want to know what the Federal Defendants failed to communicate to the tribes.    The Federal Defendants contend that they only had a duty to communicate to the tribes the scope of the Wildwood-Wemme Project, which is fully revealed by the record, and provide them with an opportunity to convey their knowledge and concerns, which they did.

The agency's duty is to "involve the consulting parties . . . in findings and determinations made during the section 106 process."    36 CFR § 800.2(a)(4).    Consultation is defined as "the process of seeking, discussing, and considering the views of other participants, and, where feasible, seeking agreement with them regarding matters arising in the section 106 process."    36 CFR § 800.16(f).    Thus, the Federal Defendants' only duty is to seek and consider information *from* the tribes, not to convey all known or suspected information *to* the tribes as plaintiffs appear to assert.

The current record reveals the actions taken by the Federal Defendants to involve the tribes in the section 106 process.    According to that record, the Federal Defendants never viewed the Wildwood-Wemme Project site as containing any potential Native American object.    Therefore, they cannot and do not contend that they advised the tribes that the area contained any potential Native American objects.    Instead, they simply provided an opportunity for the tribes to express their own concerns about the Wildwood-Wemme Project.    No supplementation of the

record is necessary to ascertain the actions taken by the Federal Defendants to seek the views of

the tribes.   If that formal consultation was not adequate, as alleged in paragraph 60, then the

remedy is remand, not supplementation of the record.   *See Local Joint Exec. Bd. of Las Vegas v.*

*N.L.R.B.,* 657 F3d 865, 873 (9th Cir 2011).

Plaintiffs are correct that the record is silent as to the information orally conveyed by the

tribes to the Federal Defendants.   In particular, plaintiffs want to know if any of the tribes

expressed views about the Wildwood-Wemme Project that the Federal Defendants ignored or

failed to consider in the section 106 process.   However, the record clearly reveals that after

being consulted, none of the three tribes expressed any concerns.   Thus, I cannot conceive how

supplementation of the record would reveal that the Federal Defendants failed to adequately

consider the views of those tribes.

Plaintiffs also complain that the Federal Defendants ignored or failed to consider

information conveyed by Jones (at some unidentified date) prior to generation of the EA, to

ODOT and FHWA that Slockish, Jackson, and Logan likely had knowledge of, or concerns with,

the Wildwood-Wemme Project.   Plaintiffs assert that they were wary of revealing in public

meetings the existence and location of burial sites due to Native American fears of prejudice and

cultural harm.   Thus, Jones and the Native American plaintiffs communicated their concerns

outside the public meeting process.   Plaintiffs contend that the extent of that communication and

how the Federal Defendants considered, or failed to consider, those concerns, is not reflected

completely in the record.

19 - FINDINGS AND RECOMMENDATIONS

However, a failure to consider input received from the public, from whatever source, is not the same as failing to engage in adequate formal consultation with interested parties, including the public.   The Federal Defendants had a duty to "provide the public with information about an undertaking and its effects on historic properties and seek public comment and input."   36 CFR § 800.2(d)(2).   As evidence of their compliance with that duty, they point to the letters in the record dated January 31 and February 26, 2008, from the FHWA to Jones and Logan.   FHWA AR 5943-45, 5962-64.   The February 26, 2008 letter details ODOT's efforts to notify the public about the project, noting four newsletters, open houses, and a public hearing prior to the EA.   Information was printed in the community newspaper *Mountain Times* and posted on a public website.   The letter also points out that both Jones and Logan were sent invitations by certified mail.   It further explains that the site is "not eligible for the National Historic Register because it lacks integrity of location, design, feeling, association, and workmanship in connection with the Barlow Road's period of significance.   In addition, the stone pillars are not eligible for the National Register or as Clackamas County landmarks." FHWA AR 5944.   This evidence shows how the Federal Defendants sought public input.   No supplementation of the record is necessary to determine the adequacy of that effort.

Therefore, plaintiffs' motion to supplement the record with respect to their failure to consult claim under the NHPA should be granted only as to testimony by Jones and Nixon to clarify what area Yallup designated in 1991 on a map as containing Native American burial sites, and otherwise should be denied.

///

**B.  NAGPRA**

The second issue referred by Judge Brown is whether the Federal Defendants had a duty to consult with plaintiffs under the NAGPRA in the absence of any actual discovery or excavation of human remains and objects.   It is uncontested that no human remains were excavated.   However, plaintiffs contend that the Federal Defendants violated the NAGPRA by failing to consult with them and by ignoring information that an impacted area contained burial grounds and a cairn marking the location of burial sites, as well as a Native American trail and campsite.[8]   Although plaintiffs believe that the record provides threshold evidence of the applicability of NAGPRA, they seek to supplement the record through discovery to resolve some disputed factual issues and prove their allegations.   The Federal Defendants respond that supplementation of the record should not be allowed because the NAGPRA does not apply and imposes no duty on them to consult.

The NAGPRA protects "cultural items" of Native American peoples which are defined as "human remains," associated and unassociated "funerary objects," "sacred objects" and objects of "cultural patrimony."   25 USC § 3002(a); 43 CFR § 10.2(d).   It permits the "intentional excavation and removal of Native American cultural items from Federal or tribal lands for purposes of discovery, study, or removal" after November 16, 1990, if four conditions are met.[9]

---

[8]  The Third Claim in the Second Amended Complaint does not specifically allege a violation of the NAGPRA by failing to consult with plaintiffs.   However, paragraph 2 invokes jurisdiction under the NAGPRA which is incorporated by reference in the Third Claim; the Federal Defendants have not previously objected to including NAGPRA in the Third Claim; and the referral by Judge Brown specifically references the NAGPRA.   Thus, I construe the Third Claim to allege a failure to consult claim under the NAGPRA, as well as under the NHPA.

[9]  The NAGPRA also sets forth the procedure to be followed after the "inadvertent discovery" of Native American remains and objects.   28 USC § 3002(d).   Plaintiffs do not allege any claim based on an inadvertent discovery.

21 - FINDINGS AND RECOMMENDATIONS

25 USC § 3002(c).   Those four conditions include a permit issued under the Archeological

Resources Protection Act ("ARPA"), 16 USC § 470aa *et seq*, and "proof of consultation" prior to

excavation or removal with "the appropriate (if any) Indian tribe."   25 USC § 3002(c).

The NAGPRA's implementing regulations set forth detailed procedures for consulting

with Indian tribes in the event of an intentional excavation or removal.   43 CFR §§ 10.3(b),

10.5.   Among other requirements, that "consultation must seek to identify traditional religious

leaders who should also be consulted and seek to identify, where applicable, lineal descendants

and Indian tribes . . . affiliated with the human remains, funerary objects, sacred objects or

objects of cultural patrimony."   43 CFR § 10.5(b)(3).   A "traditional religious leader" means "a

person who is recognized by members of an Indian tribe as . . . (i) Being responsible for

performing cultural duties relating to the ceremonial or religious traditions of that Indian tribe or

. . . (ii) Exercising a leadership role in an Indian tribe . . . based on the tribe's or organization's

cultural, ceremonial or religious practices."   43 CFR § 10.2(d)(3).

Plaintiffs first argue that the implementing regulation for an intentional excavation

conflicts with the plain meaning of the NAGPRA.   That regulation, 43 CFR § 10.2(g)(3),

defines "intentional excavation" as "the planned archaeological removal of human remains,

funerary objects, sacred objects, or objects of cultural patrimony."   By defining "excavation" as

"the planned archeological removal," plaintiffs contend that it excludes "excavation" and, thus,

limits what is protected by NAGPRA.   Since plaintiffs provide no analysis and cite only cases

for general canons of construction, I am not persuaded by that argument.   Furthermore, the word

"removal" does not exclude excavation which may be necessary in order to remove an object.

The word "planned" is consistent with the word "intentional" used in the statute, and the addition of the word "archeological" merely serves to clarify what cannot be removed and is consistent with the objects covered by the NAGPRA.

Second, the Native American plaintiffs argue that as Elders within their respective bands, they fall within the definition of a "traditional religious leader" in 43 CFR § 10.2(d)(3) who may identify "sacred objects" covered by the NAGPRA and who must be consulted prior to any excavation or removal. Plaintiffs seek to submit affidavits establishing their standing as traditional religious leaders. Supplementation for that purpose is permissible and not contested.

Even if the Native American plaintiffs qualify as traditional religious leaders who must be consulted to identify sacred objects, the NAGPRA does not apply unless Native American cultural items are actually excavated or discovered. The mere potential for their excavation or discovery is insufficient. In *San Carlos Apache Tribe v. United States*, 272 F Supp2d 860, 888 (D Ariz 2003), the court found the ARPA permit inapplicable under the NAGPRA because the government actions were "not intentional excavation and removal of human remains." Because the discovery of remains was only theoretical at that time, the court noted that "only when and if this occurs and is reported to the BIA will NAGPRA duties and obligations be triggered." *Id.* Similarly, in *Abenaki Nation of Mississquoi v. Hughes,* 805 F Supp 234, 252 (D Vt 1992), the court held that the NAGPRA claim was premature because "[a]s yet there have been no cultural or funerary items discovered at the mitigation site, though the possibility of their existence is extremely high."

23 - FINDINGS AND RECOMMENDATIONS

The Federal Defendants contend that plaintiffs have no claim under the NAGPRA because no intentional excavation occurred.   They investigated the possible presence of Native American "cultural items" and determined that there was no significant impact in moving forward with the Wildwood-Wemme Project.   The record includes archeologist Richard Pettigrew's 1988 report explaining that the possibility of burial at the rock cluster was extremely remote and required no further investigation.[10]   FHWA AR 302-10.   It also includes O'Grady's report dated June 10, 2005, that the Wildwood-Wemme Project had been closely watched because of anticipated cultural traces.   FHWA AR 2412.   He noted that the rock cluster was not relocated at the time and repeated Pettigrew's conclusion that the rock cluster "did not have any archeological significance and was not worthy of protection or mitigation."   FHWA AR 2414. In addition, the Federal Defendants consulted with the Grande Ronde, Siletz, and Warm Springs tribes prior to issuing the Revised EA and the FONSI in 2005 and 2006.   FHWA AR 5674-75. The Grande Ronde tribe provided a tribal monitor and was aware of Logan's concerns when the tree cutting began in April 2008.   FHWA AR 5666, 5726–28.   The current staff and leadership for the Yakama Nation were consulted later in April 2008 and raised no concerns that the Wildwood-Wemme Project would impact Indian burials.   FHWA AR 6425–33, 6544, 7274–75, 7495.   In addition, the FHWA's tribal consultations and considerations of historic and cultural resources were reviewed and approved by the ACHP.   FHWA AR 6139, 6571–73.   Thus, according to Federal Defendants, no Native American "cultural items" were identified within the

---

[10]  Plaintiffs point out that, at the time of Pettigrew's report, NAGPRA had not yet been passed, such that Pettigrew had no legal requirement to consult with Native Americans.   In any event, the record reveals that the Federal Defendants later consulted with the tribes, albeit belatedly with the Yakama Nation.

24 - FINDINGS AND RECOMMENDATIONS

Wildwood-Wemme Project area prior to any excavation and removal, such that any duties under NAGPRA were not triggered.

Plaintiffs disagree, claiming that that the Wildwood-Wemme Project area contained an ancient Native American trail and an associated campsite, burial grounds, and a rock cairn marking the location of surrounding burial sites, yet the Federal Defendants proceeded to excavate the area, causing damage or destruction to those "cultural items."   Even though no human remains were found, the record reveals that a cairn was present at the site which was "scattered and disturbed" by July 24, 2008, after excavation of the site began.   BLM AR 06. According to plaintiffs, that cairn had cultural importance to Native Americans.

Plaintiffs seek to supplement the record to show that the Federal Defendants did, in fact, have prior knowledge that the Wildwood-Wemme Project site contained Native American "cultural items."   In particular, they wish to supplement the record with testimony by Jones who can confirm the hearsay evidence in the record suggesting that in 1990 Warm Springs Elder Larry Dick communicated his belief to BLM that the cairn was a grave marker.   BLM AR 08-09.   As previously noted, Jones also is prepared to testify about his meetings prior to generation of the EA with officials of ODOT and FHWA in which he specifically mentioned Slockish, Jackson, and Logan as individuals likely to have knowledge of, or concerns with the Wildwood-Wemme Project, and identified issues relating to the undertaking's potential effects on historic properties. In addition, as previously noted, ODOT held a meeting with the Warm Springs tribe (FHWA AR 3180, 3798), of which there is no written record.

---

In addition to information communicated directly to the Federal Defendants, plaintiffs' argument is premised to a large extent on information that they believe was communicated to ODOT which ODOT, in turn, may or may not have communicated to the Federal Defendants. In other words, plaintiffs claim that the record is incomplete and does not contain all of the information communicated to the Federal Defendants regarding the actual, as opposed to merely the possible existence of Native American "cultural items" on the site.   They seek discovery to resolve this disputed fact issue as to the extent of the Federal Defendants' knowledge prior to commencing construction.

Even if this disputed fact is resolved in plaintiffs' favor, the Federal Defendants fall back on the APA standard of review.   Under the APA, the agency's decision as to whether the objects are actually Native American "cultural items" may not be set aside unless it is arbitrary or capricious.   *Bonnichsen v. United States*, 367 F3d 864, 879 (9th Cir 2004).   A decision is arbitrary or capricious if it "was based on inadequate factual support."   *Id.*   Therefore, the issue is whether the record contains substantial evidence to support the Federal Defendants' decision that any damaged or destroyed objects were not subject to the NAGPRA.   According to the Federal Defendants, the record contains substantial evidence based on the lack of human remains, the archeologists' reports, and the lack of concern expressed by the Warm Springs, Grande Ronde and Yakama Nation tribes after consultation.   However, this argument fails to address plaintiffs' concern that the record does not contain all of the information presented to the Federal Defendants.   Only if that record is supplemented to include that evidence can it be ascertained whether the Federal Defendants' decision was arbitrary or capricious.

As previously noted, under the NEPA exception, the court may expand review beyond the record where an agency has "swept stubborn problems or serious criticism . . . under the rug.'"   *Animal Defense Council*, 840 F2d at 1437 (citation and quotations omitted).   The NEPA exception is the first of the reasons to allow expansion of the record to determine if the agency has considered all factors and explained its decision.   It allows the court to "look [] outside the record to determine what matters the agency should have considered but did not."   *Inland Empire Pub. Lands Council v. United States Forest Serv.*, 88 F3d 754 , 760 n5 (9th Cir 1996). The Third Claim alleging a violation of the NAGPRA (unlike the NHPA) is not a claim that involves the NEPA.   However, the rationale for the exception is the same, namely the need to complete the allegedly incomplete record in order to show that the agency ignored or inadequately explored information presented to it.   This court can conceive of no reason why the NEPA exception should not apply equally here.

Therefore, plaintiffs should be allowed to supplement the record to prove first, that the Wildwood-Wemme Project area contained Native American "cultural items" as defined by the NAGPRA and, second, that the Federal Defendants had prior knowledge that the Wildwood-Wemme Project would result in the excavation and/or removal of Native American "cultural items."   That evidence will necessarily consist of:   (1) affidavits establishing plaintiffs' standing as traditional religious leaders and identifying "sacred objects" within the Wildwood-Wemme Project site; and (2) testimony by Jones describing what information he and Yallup communicated to ODOT and the Federal Defendants and confirming Larry Dick's communication to the BLM in 1990.

Plaintiffs also seek discovery regarding what was discussed at the meetings with the tribes.   However, as discussed above, those tribes were consulted as part of the section 106 process under the NHPA and expressed no concerns regarding the Wildwood-Wemme Project. Therefore, I can conceive of no discovery regarding those meetings that will support plaintiffs' NAGPRA claim.   Plaintiffs also request the deposition of Dr. Connolly, presumably to find out what else he learned from Yallup, but failed to disclose in his 1992 report.   They suggest that if the Federal Defendants had performed an adequate investigation, they would have contacted Dr. Connolly and perhaps obtained actual knowledge as to the existence of Indian burial sites. However, the issue under the NAGPRA is what the Federal Defendants knew, not what they should have known.   Therefore, Dr. Connolly's deposition will not assist plaintiffs on their NAGPRA claim.

**III.**    **<u>Constitutional Claims</u>**

As discussed above, the Twelfth and Thirteenth claims survive as to the alleged violations of plaintiffs' constitutional rights arising from interference with their free exercise of religion.   Plaintiffs seek discovery as to these claims, arguing that the record is deficient regarding the contemporary religious use of the A.J. Dwyer Scenic Area for Native American plaintiffs and any other Native Americans.

Contending that discovery is appropriate for constitutional claims in APA actions, plaintiffs rely on *Hensala v. Dep't of the Air Force*, 343 F3d 951 (2003).   In that case, the plaintiff filed a claim alleging defendant violated the APA, as well as his due process, equal protection and free speech rights.   The district court allowed limited discovery but then granted

summary judgment as to all claims.   On appeal, the Ninth Circuit reversed and remanded for

further proceedings on the equal protection and due process claims, noting genuine issues of fact

needed to be resolved.   However, its decision does not discuss why the trial court ordered

discovery or whether discovery is appropriate in APA cases involving alleged constitutional

violations.

The Federal Defendants argue that any constitutional claims must be brought within the

confines of an APA claim and its administrative record and contend that *Hensala* erred in

allowing discovery.   *See Harvard Pilgrim Health Care of New England v. Thompson*, 318 F

Supp2d 1, 10-11 (D RI 2004) (holding that the presence of constitutional claims in an APA case

does not expand review beyond the existing administrative record); *Charlton Mem. Hosp. v.*

*Sullivan*, 816 F Supp 50, 51 (D Mass 1993) (holding that adding constitutional claims to APA

claims "cannot so transform the case that it ceases to be primarily a case involving judicial

review of agency action").

In my prior F&R, I found it unnecessary to resolve that thorny legal issue since I

concluded that plaintiffs could supplement the record with the same information on the failure to

consult claim under the NHPA.   I now conclude that discovery on that claim should be limited

only to clarification of Yallup's 1991 transcript.   However, I also conclude that discovery

should be allowed regarding the duty to consult under the NAGPRA as to what "sacred objects"

existed on the site.   The importance of the site to Native Americans is based in part on its

religious importance, which is the basis of the remaining constitutional claims concerning the

free exercise of religion.   In other words, discovery as to the duty to consult under the NAGPRA

will necessarily involve the same information sought with respect to discovery regarding the constitutional claims.   Therefore, it remains unnecessary to also allow discovery on the remaining constitutional claims.

## RECOMMENDATION

Plaintiffs' Renewed Motion to Supplement the Record and to Compel Discovery (docket #107) should be GRANTED as to the Third claim for failing to consult:   (1) under the NHPA as to testimony by Jones and Nixon to clarify what area Yallup designated in 1991 as containing Native American burial sites; and (2) under the NAGPRA as to (a) affidavits establishing plaintiffs' standing as traditional religious leaders and identifying "sacred objects" within the Project area; and (b) testimony by Jones describing what information he communicated to ODOT and the Federal Defendants that is not reflected in the Administrative Record and confirming Larry Dick's communication to the BLM in 1990; and otherwise should be DENIED.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.   Objections, if any, are due July 6, 2012.   If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

///

///

///

30 - FINDINGS AND RECOMMENDATIONS

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.   When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED this 19th day of June, 2012.


s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge