UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


HEREDITARY CHIEF WILBUR
SLOCKISH, a resident of Washington and an
enrolled member of the Confederated Tribes
and Bands of the Yakama Nation, *et al*,                    Case No. 3:08-cv-1169-ST

                             Plaintiffs,                    OPINION AND ORDER

              v.

UNITED STATES FEDERAL HIGHWAY
ADMINISTRATION, an Agency of the
Federal Government, *et al*,

                             Defendants.


STEWART, Magistrate Judge:

## **INTRODUCTION**

This case involves the U.S. Highway 26 Wildwood-Wemme highway widening project

("Wildwood-Wemme Project") near Mt. Hood, Oregon, which was substantially completed in

2008.  Plaintiffs consist of individuals and organizations who seek to preserve, protect, and

rehabilitate Native American sacred and cultural sites and historical and archaeological resources

in the lands surrounding Mt. Hood, Oregon.  Among other things, plaintiffs alleged that the

United States Federal Highway Administration ("FHWA"), United States Bureau of Land

Management ("BLM"), and Advisory Council on Historic Preservation ("ACHP") (collectively

"Federal Defendants"), as well as Matthew Garret and the Oregon Department of Transportation ("ODOT") (collectively "State Defendants"), violated various federal laws during this project.

After filing this action on October 6, 2008, plaintiff filed a First Amended Complaint on February 3, 2009. The Federal Defendants filed a motion to dismiss which was granted in part without prejudice. Plaintiffs then filed a Second Amended Complaint on June 16, 2010. The Federal Defendants lodged the Administrative Record on October 28, 2010, filed sealed portions on November 18, 2010, and, after plaintiffs identified missing documents, filed a supplement on March 7, 2011. Because the supplement did not adequately address all of their concerns, plaintiffs filed their first Motion to Supplement Record and to Compel Discovery on March 29, 2011, which was denied as premature.

All defendants then filed Motions for Judgment on the Pleadings, and plaintiffs filed a Renewed Motion to Supplement the Record and to Compel Discovery. This court granted in part and denied in part the Federal Defendants' motion, granted the State Defendant's motion, and granted in part plaintiffs' motion with respect to one claim. In the meantime, plaintiffs filed a Third Amended Complaint on July 3, 2012, to which defendants filed their Answer on July 18, 2012. Shortly thereafter, on September 11, 2012, this case was stayed pending settlement negotiations. Over the next three years, the parties engaged in extensive settlement discussions. Unfortunately, the parties were unable to resolve their differences, and an order lifting the stay was granted August 27, 2015.

Plaintiffs have now filed a Motion for Leave to File Their Fourth Amended Complaint (docket #217), seeking to add factual allegations and two new claims for violation of the Federal Recordkeeping Act, 44 USC chapters 21, 29, 31 and 33 ("FRA"): (1) the failure to adequately maintain records (Proposed Eleventh Claim) and (2) the failure to take enforcement action to

address destruction or recovery of records (Proposed Twelfth Claim).  Proposed Fourth

Amended Complaint ("Fourth AC"), ¶¶ 89–92.  For the reasons set forth below, that motion is

denied as to the two new FRA claims and otherwise is granted.

## LEGAL STANDARD

FRCP 15 and the relevant case law evince a "strong policy to permit the amending of

pleadings."  *Sweaney v. Ada Cnty.*, 119 F3d 1385, 1392 (9th Cir 1997) (citations and internal

quotation omitted).  Deciding whether to grant leave to amend, the Supreme Court has offered

the following factors for the court to consider:

> In the absence of any apparent or declared reason — such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed, undue prejudice to
> the opposing party by virtue of allowance of the amendment, futility of
> amendment, etc. — the leave sought should, as the rules require, be
> "freely given."

*Foman v. Davis*, 371 US 178, 182 (1962).

Of these factors, "it is the consideration of prejudice to the opposing party that carries the

greatest weight."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F3d 1048, 1052 (9th Cir 2003).

Federal policy strongly favors determination of cases on their merits.  *Howey v. United States*,

481 F2d 1187, 1190 (9th Cir 1973).  Therefore, because "the purpose of pleading is to facilitate a

proper decision on the merits," leave to amend is "freely given."  *Foman*, 371 US at 182 (citation

and internal quotation omitted).

## I.    Proposed FRA Claims

The Federal Defendants argue that leave to amend to add the FRA claims should be

denied because they fail to state a claim and are time-barred and, thus, are futile, and also would

cause undue prejudice and delay.  Although these claims do not appear to be time-barred, this

court concludes that they do fail to state a claim and would cause unfair prejudice and undue delay.

A.    **Futility of Amendment**

Congress enacted the FRA to ensure the accurate and complete documentation of federal policies and transactions and to encourage efficient records management practices among federal agencies.  44 USC § 2902.  Materials qualify as records if they are "made or received by a Federal agency . . . in connection with the transaction of public business" and are "preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them."  44 USC § 3301(a)(1)(A).  No record may be alienated or destroyed apart from the FRA's exclusive disposal provisions.  44 USC §§ 3308-14.  If the head of the agency "has reason to believe" that records have been improperly removed, then he or she must notify the Attorney General who may initiate action to recover the records.  44 USC §§ 2905(a), 3106(a).

The FRA provides no cause of action to private parties "to invoke federal courts to prevent an agency official from improperly destroying or removing records."  *Armstrong v. Bush*, 924 F2d 282, 294 (DC Cir 1991) (*Armstrong I*); *see Kissinger v. Reporters Comm. for Freedom of the Press*, 445 US 136, 148–49 (1980).  However, an agency head's actions or failures to act under the FRA may be subject to judicial review under § 702 of the Administrative Procedures Act, 5 USC § 702 ("APA") in two specific instances:  (1) if the adequacy of an agency's recordkeeping guidelines and directives are at issue; or (2) if an agency head has refused to seek the initiation of an enforcement action by the Attorney General upon determining

that a record has been or will be removed in violation of agency recordkeeping guidelines and

directives. *Armstrong I*, 924 F2d at 292–93, 295.

Both of plaintiffs' FRA claims are based on the following new factual allegation:

> In March 2008, CGS Curator Jones submitted to Defendant
> FHWA, Defendant BLM, and Defendant ACHP, a transcript of a
> 1991 meeting, in which Yakama elder Wilfred Yallup, then Chair
> of the Yakama Indian Nation, had provided testimony at a meeting
> with ODOT's representatives about, *inter alia*, the presence of
> Native American graves along the U.S. 26 highway corridor,
> including the Dwyer Memorial Forest, Bear Creek, and the Indian
> Meadow/Pioneer Meadow. The transcript refers to a map, which
> cannot be located.
>
> Defendant BLM has looked for, but has not been able to locate, the
> map in its files. At Defendant BLM's request, Defendant ODOT
> has searched its records, but also has been unable to locate the map
> in its files. In fact, Defendant ODOT no longer has its file on this
> project. The transcript reveals that this meeting was tape-recorded.
> But no defendant has found the tape recording.

Fourth AC, ¶ 45.

By failing to retain the map, tape recording, and ODOT file, plaintiffs allege in the

Proposed Eleventh Claim that the Federal Defendants have failed to comply with the FRA,

44 USC § 3314. The Proposed Twelfth Claim alleges that the agency heads of the Federal

Defendants have breached their obligation under the FRA, 44 USC § 3106, to notify the

Attorney General of breach of their statutory obligations to prevent the improper removal or

destruction of records.

### 1.    <u>Failure to Retain Records (Proposed Eleventh Claim)</u>

The Federal Defendants first assert that plaintiffs fail to plead that either the map, tape

recording, or ODOT file is a federal record under the FRA. Plaintiffs allege that at a 1991

meeting with ODOT, Yakama elder Wilfred Yallup gave tape-recorded testimony referring to a

map. CGS Curator Jones submitted a transcript of Yallup's testimony to the Federal Defendants

in March 2008. However, plaintiffs do not allege that Jones also submitted the map with the transcript or that the Federal Defendants received the map at any other time.

Agency personnel must receive non-federal records in the course of their official duties for those previously non-federal records to qualify as a federal record. 36 CFR § 1222.10(b)(3). Plaintiffs fail to allege that an agency or official of the United States Government received the map, tape recording, or ODOT file in connection with federal public business at any time after ODOT recorded Yallup's testimony in 1991.

In response to this failure, plaintiffs argue that they should not be penalized for omitting facts that are in complete control of the Federal Defendants and ODOT and seek limited discovery as to whether the Federal Defendants received and/or lost the map. However, to avoid dismissal, plaintiffs must plead enough facts "to raise a reasonable expectation the discovery will reveal evidence of the illegal conduct." *Bell Atl. Corp. v. Twombly*, 550 US 544, 556 (2007). Because Jones is connected with CGS (one of the plaintiffs), plaintiffs should know whether Jones submitted the map to the Federal Defendants along with the transcript in March 2008. Apparently he did not. Instead, plaintiffs speculate that the Federal Defendants must have received the map from ODOT. Such speculation is insufficient to permit discovery to proceed with this claim. By failing to plead that the map, tape recording, or ODOT file are federal records subject to the FRA, the proposed FRA claims fails.

Even if plaintiffs cure this deficiency, the proposed amendments fail to allege that the Federal Defendants' recordkeeping is contrary to law. A court may review an agency's recordkeeping guidelines and directives under the APA when the adequacy of those recordkeeping guidelines and directives is at issue. *Armstrong I*, 924 F2d at 295. The Proposed Eleventh Claim alleges that the Federal Defendants violated the FRA by failing to keep the map

as part of the file on the Wildwood-Wemme Project.  Because federal agencies may not destroy federal records apart from the FRA's exclusive disposal provisions, plaintiffs allege that the recordkeeping policies of Federal Defendants do not meet the mandate of the FRA and are subject to judicial review.  However, to state this claim under the FRA, plaintiffs must allege that a particular record-keeping policy was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" under § 702 of the APA.  *Armstrong I*, 924 F2d at 297.

> [T]he fact that some record material may have been destroyed does not compel a finding that the [agency's recordkeeping] guidelines are arbitrary and capricious.  Instead, the guidelines should be evaluated on the basis of whether they adequately explain the factors that agency staff should consider in deciding whether specific documents . . . are records.

*Id* at 297 n14; *see also Competitive Enter. Inst. v. U.S. Envtl. Prot. Agency*, 67 F Supp3d 23, 32 (D DC 2014) ("*Armstrong I* distinguished between reviewable challenges to an agency's record-keeping guidelines under the APA, and unreviewable challenges to the agency's day-to-day implementation of its guidelines.").

Plaintiffs do not allege that the Federal Defendants failed to retain (or destroyed) the map pursuant to a specific guideline or policy which would violate FRA requirements.  Merely alleging that the Federal Defendants violated the FRA by failing to retain the map is not sufficient to state a claim that the Federal Defendants' specific recordkeeping policies created under the FRA are arbitrary and capricious.  Therefore, the Proposed Eleventh Claim fails to state a claim for judicial review under the FRA of the Federal Defendants' recordkeeping guidelines and directives.

///

///

///

7 – OPINION AND ORDER

## 2.    Failure to Enforce FRA (Proposed Twelfth Claim)

The FRA requires an agency head to take action "to notify the Attorney General if he determines or 'has reason to believe' that records have been *improperly removed* from the agency." *Kissinger*, 445 US at 148, quoting 44 USC § 3106 (emphasis added).  The two separate and distinct enforcement duties under 44 USC § 3106 include:  "(1) in the event of any unlawful removal, defacing, alteration or destruction of records, an agency head must notify the Archivist; and (2) in the event of any unlawful removal, the agency head must request that the Attorney General initiate an action for the recovery of the records." *Citizens for Responsibility & Ethics in Wash. v. U.S. S.E.C.*, 916 F Supp2d 141, 146 (D DC 2013).  The mandatory enforcement duty under 44 USC § 3106 "is only triggered by the *removal* of documents." *Id* at 147.  Thus, where a plaintiff has failed to "affirmatively allege facts that make plausible the claim that documents have been '*removed*' from [the agency]," the claim must be dismissed. *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 82 F Supp3d 228, 236 (D DC 2015) (emphasis added).

As previously discussed, plaintiffs fail to allege that the Federal Defendants ever accepted into their custody the map, tape recording, or ODOT file.  Therefore, they have pled no factual basis to infer that the agency heads determined or had reason to believe that an agency official unlawfully removed the map, tape recording, or ODOT file from any federal agency.

Even if plaintiffs cure this pleading deficiency, they face another obstacle to stating a viable claim for judicial review under the FRA.  Prior to initiating enforcement action through the Attorney General to recover records unlawfully removed from a federal agency, an agency can exercise its discretion to undertake internal remedial steps such as "disciplining the staff involved in the unlawful action, increasing oversight by higher agency officials, or threatening legal action." *Citizens for Responsibility & Ethics in Wash.*, 916 F Supp2d at 150-51; *Armstrong*

8 – OPINION AND ORDER

*I*, 924 F2d at 296 n12.  Federal agencies retain "broad discretion regarding what internal remedial steps [the agency] may take in response to a loss of records," and consistent with the standard of review under the APA, courts may only look for "a rational connection between the facts found [by the agency] and the choice made."  *Id* at 149, quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 US 29, 43 (1983).

Plaintiffs allege that BLM not only searched its records, but also asked ODOT to search its records for the map.  However, they do not allege that these steps were an insufficient response to the loss of the map, such that the agencies breached their statutory duty by not initiating recovery efforts through the Attorney General.  Moreover, implementing other internal remedial efforts, such as disciplining agency staff or increasing oversight by higher agency officials, would be premature without a determination that a federal agency employee unlawfully removed or destroyed the map.  Accordingly, the Federal Defendants have not demonstrated a "clear error of judgement" such that this court could find their actions arbitrary or capricious.

### 3.   <u>Requested Relief</u>

As relief under the proposed FRA claims, plaintiffs seek an injunction for restoration of the missing A.J. Dwyer Preservation Area File.  Fourth AC, Prayer, ¶ 4(f).  However, the APA authorizes a district court only to review:  (1) the adequacy of an agency's recordkeeping guidelines and directives; and (2) whether the Archivist or the head of an agency has properly performed his FRA enforcement duties.  *Armstrong I*, 924 F2d at 293, 296.  Therefore, the only available relief is:  (1) on the Proposed Eleventh Claim, a declaration that the recordkeeping guidelines and directives violate the FRA and an injunction against their enforcement; and (2) on the Proposed Twelfth Claim, a declaration that the improper removal has not been properly remedied and an injunction ordering the Federal Defendants to request the Attorney General to

initiate legal action to recover the record.  Because this court cannot grant plaintiffs' prayer for relief under the FRA in the Fourth AC, the FRA claims are futile.

### 4.    <u>Statute of Limitations</u>

Even if plaintiffs properly plead claims under the FRA, the Federal Defendants argue that they are time-barred.  FRA claims must be brought under the APA.  *See Armstrong I*, 924 F2d at 295.  A six-year statute of limitation applies to claims under the APA.  28 USC § 2401(a) (civil actions against the United States are barred "unless the complaint is filed within six years after the right of action first accrues"); *Sierra Club v. Penfold*, 857 F2d 1307, 1315 (9th Cir 1988) (finding that 28 USC § 2401 applies to the APA); *Wind River Mining Corp. v. United States*, 946 F2d 710, 713 (9th Cir 1991) (reaffirming *Penfold*).  A claim under the APA starts to accrue on the date of a final agency action, specifically when an agency publishes a notice of final action. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F3d 923, 930–31 (9th Cir 2010) (explaining that publication has the effect of placing the interested party on notice.).  Alternatively, a claim starts to accrue under the six-year statute of limitations when "plaintiffs knew or should have known the facts upon which their claims are based."  *Sisseton-Wahpeton Sioux Tribe, of Lake Traverse Indian Reservation, N. Dakota & S. Dakota v. United States*, 895 F2d 588, 594 (9th Cir 1990).

Plaintiffs do not allege when the Federal Defendants violated their statutory duties under the FRA or when their FRA claim accrued.  The Federal Defendants argue that the FRA claims accrued over seven years ago on April 8, 2008, when the FHWA published its Notice of Final Agency Actions on the US 26 Highway Widening Project.  At that point, the Federal Defendants assert that the plaintiffs should have known that they failed "to retain the map that identifies the presence of Native American graves along the US 26 highway corridor," depriving plaintiffs "of

their ability to show that this information was ignored in the decision-making process regarding the construction of the U.S. 26 Wildwood-Wemme Project" as they allege.  Fourth AC, ¶ 96.

However, the issue is when plaintiffs knew or should have known that the map was missing from the Administrative Record.  Simply because the FHWA published its Notice of Final Agency Action adverse to plaintiffs does not necessarily mean that the map was missing. Instead, the agency action may have been based on an arbitrary and capricious failure to consider the map.  Only after the Federal Defendants filed the Administrative Record on October 28, 2010 (dockets #80, ##82–83) did plaintiffs acquire any factual basis to conclude that the Federal Defendants did not possess the map.  After an extensive review of the lodged Administrative Record, plaintiffs notified defendants on December 17, 2010, of many holes and missing documents, including "Plaintiff CGS's 3/6/08 Urgent Fax/Memo to Defendant ACHP," which transmitted the transcript of Yallup's testimony (docket #92-1).  The Federal Defendants then lodged a Supplemental Administrative Record on March 7, 2011 (docket #90).  Finding it inadequate to address their concerns, plaintiffs filed a Motion to Supplement the Administrative Record which specifically mentioned the missing map (dockets #92 & #93, pp. 6-7).

Plaintiffs seek to file their FRA claims well within the six-year statute of limitations after the filing of the Administrative Record.  Therefore, it is not necessary to analyze whether the proposed amendment relates back to the date of the original pleading under FRCP 15(c). Instead, the issue is whether adding those claims at this late date will cause undue prejudice or delay.

///

///

///

11 – OPINION AND ORDER

C.    **Undue Prejudice or Delay**

Plaintiffs could have asserted their FRA claims at any point after learning of the missing map, tape recording, and/or ODOT file in 2010. Although they filed a motion to supplement the record, that motion was dismissed as premature while threshold issues were resolved by defendants filing motions for judgment on the pleadings (docket #101). Defendants' motions were granted and denied in February 2012 (docket #131). Plaintiffs then filed a Third Amended Complaint (docket #157) in July 2012, which did not include any FRA claims. In September 2012, shortly after the court granted in part plaintiffs' renewed Motion to Supplement the Administrative Record (docket #171), this case was stayed for nearly three years while the parties attempted to negotiate a settlement. Therefore, the only delay in seeking to add the FRA claims is two months after the filing of the Third Amended Complaint and the stay of this case.

However, adding those new FRA claims at this point will cause further delay in resolving this case. The amendments would protract the discovery timeline by requiring preparation of an administrative record for actions for ODOT and the Federal Defendants from 1991 until 2008 that are unrelated to the Wemme-Wildwood Project, including the recordkeeping guidelines and directives for each defendant agency and potential depositions of persons responsible for the recordkeeping. A court's denial of a motion for leave to amend is appropriate when extensive discovery on a newly-introduced issue is necessary. *Howey*, 481 F2d at 1191 ("If extensive discovery was still needed, then the court' denial of the government's motion for leave to amend might have been correct.").

Of greater importance is the prejudice to the Federal Defendants by adding these new claims. The Ninth Circuit has consistently held that when deciding whether a district court abused its discretion in denying a plaintiff's request to amend, prejudice to the opposing party is

the factor that carries the greatest weight. *Eminence Capital*, 316 F3d at 1052. The prejudice in this case arises from shifting the focus of the litigation from the merits of the Federal Defendants' decision-making to their recordkeeping. The Ninth Circuit upheld the district court's denial for leave to file an amended complaint where "in light of the radical shift in direction posed by these claims, their tenuous nature, and the inordinate delay" that would have required "defendants to have undertaken, at a late hour, an entirely new course of defense." *Morongo Band of Mission Indians v. Rose*, 893 F2d 1074, 1079 (9th Cir 1990). A similar situation is presented here.

Plaintiffs correctly counter that the map has always been recognized by all parties as relevant to their claims because it was (or should have been) the key piece to the decision-making regarding the Wemme-Wildwood Project. However, even without the FRA claims, plaintiffs remain free to argue that ODOT's knowledge as to the location of Native American graves obtained from Yallup in 1991 should be imputed to the Federal Defendants or that, as an evidentiary matter, an adverse inference should be drawn against the Federal Defendants based on spoliation of evidence. The FRA claims add nothing to this case except more time and money.

As a result, plaintiffs' motion to amend is denied as to the Proposed Eleventh and Twelfth Claims.

## II.    Proposed Additional Factual Allegations

Plaintiffs also seek to add the following specificity to their allegations, including: (1) details about plaintiffs' affiliations and uses of the area potentially affected by the Wildwood-Wemme Project (Fourth AC, ¶¶ 4–7, 18); (2) names of a number of sites in Mt. Hood (*id*, ¶ 13);

and (3) references to "Cedar trees," and ruts and swales from Pioneer wagons as cultural and natural resources found in the U.S. 26 highway corridor. *Id*, ¶¶ 23–24, 26–28, 31–32, 38, 69.

Defendants argue that adding specificity to plaintiffs' factual allegations does not justify leave to amend because it will not save their claims from dismissal for failing to state claim. Dismissal without leave to amend is proper where the complaint could not be saved by the amendment. *Steckman v. Hart Brewing, Inc.*, 143 F3d 1293, 1296 (9th Cir 1998). However, this court has already ruled that plaintiffs do state claims to which they seek to add factual allegations. Those additions are helpful and do not change the substance of the claims. Therefore, they are allowed under FRCP 15(a).

## **ORDER**

Plaintiffs' Motion for Leave to File Their Fourth Amended Complaint (docket #217) is DENIED in part as to the new Eleventh and Twelfth Claims, and otherwise granted. In addition, to comply with prior orders of the Court, the Fourth Amended Complaint must delete claims against defendants Matthew Garrett and ODOT. The Fourth Amended Complaint is due on or before January 7, 2016.

DATED December 17, 2015.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge