UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

HEREDITARY CHIEF WILBUR
SLOCKISH, et al,

                Plaintiffs,                                Case No. 3:08-cv-01169-YY

           v.                                 FINDINGS AND
                                               RECOMMENDATIONS

UNITED STATES FEDERAL HIGHWAY
ADMINISTRATION, et al,

                Defendants.

YOU, Magistrate Judge:

      Before the court are cross motions for summary judgment (ECF ##287, 294) regarding the Thirteenth Claim in the Fourth Amended Complaint, in which plaintiffs allege that the Federal Highway Administration ("FHWA"), Bureau of Land Management ("BLM"), and Advisory Council on Historic Preservation (collectively the "Federal Defendants") have interfered with their free exercise of religion in violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C.A. §§ 2000bb–2000bb-4.  For the reasons discussed below, federal defendants' motion for summary judgment against the Thirteenth Claim (ECF #287) should be GRANTED, plaintiff's motion for summary judgment (ECF #294) should be DENIED, and plaintiff's Thirteenth Claim should be DISMISSED.

1 – FINDINGS AND RECOMMENDATIONS

## LEGAL STANDARD

Under FRCP 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citing FRCP 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id.* A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu,* 198 F.3d at 1134.

///

///

## FINDINGS

Federal defendants assert that plaintiffs' Thirteenth Claim must be dismissed because they have failed to establish a *prima facie* case under the RFRA that their right to exercise religion has been substantially burdened. They further contend that plaintiffs lack standing and that this claim is barred by laches. Plaintiffs counter that this court has already ruled in its favor and that its rulings are law of the case. They otherwise contend that they have established a *prima facie* case that their right to exercise religion has been substantially burdened. For the reasons discussed below, this court should find that plaintiffs have failed to establish a *prima facie* case and decline to exercise its discretion in applying the doctrine of law of the case to its prior rulings.

**I.      Plaintiffs have failed to establish a *prima facie* case under the RFRA.**

**A.      The RFRA**

The RFRA provides in relevant part:

(a) **In general**
Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) **Exception**
Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000bb–1.

To establish a *prima facie* case under the RFRA, "a plaintiff must present evidence sufficient to allow a trier of fact rationally to find" (1) the activities the plaintiff claims are burdened are an "exercise of religion," and (2) the government action "substantially burdens" the

plaintiff's exercise of religion. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1068 (9th Cir. 2008). If the plaintiff establishes a *prima facie* case, the burden shifts to the government to prove that the challenged government action is in furtherance of a "compelling governmental interest" and is implemented by "the least restrictive means." *Id.*

The RFRA was enacted by Congress in response to the Supreme Court's holding in *Emp't Div. v. Smith*, 494 U.S. 872 (1990). The RFRA notes that "in [*Smith*] the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion." 42 U.S.C.A. § 2000bb(a)(4). The RFRA recognizes, however, that "the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C.A. § 2000bb(a)(5). Thus, the purposes of the RFRA, as expressly stated in the statute, are:

> (1) to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and
> (2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

42 U.S.C.A. § 2000bb(b).

**B.    Analysis**

In their RFRA claim, plaintiffs assert that federal defendants have substantially burdened and interfered with their right to exercise religion by "damaging and destroying a historic campground and burial grounds through tree cutting and removal, grading, and ultimately burying the campground and burial grounds," and "by blocking off access to these by installation of a new guardrail." Fourth Am. Compl. ¶ 95, ECF #223. This sacred site is traditionally known

to plaintiffs' tribes as Ana Kwna Nchi nchi Patat (the "Place of Big Big Trees"),[1] and is located

within the A.J. Dwyer Memorial Scenic Area, an approximately eight-acre parcel managed by

the BLM and located on the north side of U.S. 26 between the villages of Wildwood and

Wemme.  Def. Mot. Partial Summ. J. 3, ECF #287; Pl. Resp. 5, ECF #292.  These actions were

taken as part of the widening of U.S. 26 in response to community outcry over vehicular

accidents, including at least one fatality, caused by the lack of a left-turn lane.[2]  However, as

discussed in detail below, plaintiffs' claim fails because they cannot show that their right to

exercise religion has been "substantially burdened."[3]

Plaintiffs' claim is foreclosed by the Ninth Circuit's decision in *Navajo Nation*.  In

*Navajo Nation*, the site at issue was the Skibowl recreational area located on federally owned

public land in Northern Arizona.  The plaintiffs objected to the application of artificial snow,

---

[1] This site is sacred and holds spiritual importance to plaintiffs for numerous reasons, including that it is a burial ground along an ancient trading route.  *See* Pl. Resp. 5-6, ECF #292.  The site contained an altar of rocks that marked surrounding graves and was a focal point for religious ceremonies.  *Id.* at 7.  As plaintiff Chief Johnny Jackson described it, "[T]hat trail was . . . where our people passed on that could not make it home.  And they were put away there because they had no way to bring them back to where they came from."  Dep. Chief Johnny Jackson ("Jackson Dep.") 15:20-23, ECF #287-2, at 5.  The rocks, which had been used for trade, came from different parts of the state, and "when they put these people in the ground," the rocks were left "as a marker for them."  *Id.* 53:5-15, ECF #287-2, at 14.  During highway construction, Chief Jackson and others watched the "highway department" remove the rocks and "throw[] them in a truck."  *Id.* at 45:19-21, ECF #287-2, at 12.

[2] In 1999, 600 petitioners asked the Oregon Department of Transportation to address safety issues along this section of U.S. 26 due to a high number of accidents, including fatalities.  ECF #292-42, at 24.  Fourteen accidents occurred between 2000 and 2004, including one fatality.  ECF #292-36, at 119.  Numerous driveways and streets access U.S. 26 in this section.  *Id.* "Motorists making left turns from the highway [were] frequently required to stop in the fast lane to wait for a gap in oncoming traffic while those turning left onto the highway [had] no median refuge to enter."  *Id.*

[3] Federal defendants do not appear to contest that the activities plaintiffs claim are burdened are an "exercise of religion" under the first prong of the RFRA analysis.  Thus, these Findings and Recommendations focus on the question of whether plaintiffs' exercise of religion has been "substantially burdened."

made from recycled wastewater containing trace amounts of human waste, on mountain peaks

they believe are a living entity and sacred to their religion.  They claimed that the artificial snow

desecrated the entire mountain and deprecated their religious ceremonies, thereby imposing a

substantial burden on their free exercise of religion under the RFRA.  535 F.3d at 1063.

The Ninth Circuit, sitting en banc, rejected this argument.  The court first recognized that

the RFRA's "stated purpose" is to "restore the compelling interest test as set forth in *Sherbert* . . .

and . . . *Yoder*" as "a workable test for striking sensible balances between religious liberty and

competing prior governmental interests." *Id.* at 1068-69.  In *Sherbert*, the plaintiff, a Seventh-

day Adventist, was fired by her South Carolina employer because she refused to work on

Saturdays, as it was a day of rest according to her faith.  The Supreme Court held that the

plaintiff was unconstitutionally forced "to choose between following the precepts of her religion

and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in

order to accept work, on the other hand."  374 U.S. at 404; *see also Ruiz-Diaz v. United States*,

703 F.3d 483, 486 (9th Cir. 2012) (describing the situation in *Sherbert* "as an example of a

forced choice that Congress intended to prevent by passing RFRA").  In *Yoder*, the defendants,

who were Amish, were convicted of violating a state law that required their children to attend

school until they turned sixteen.  The Supreme Court reversed their convictions, holding the

Wisconsin law "affirmatively compel[led the defendants], under threat of criminal sanction, to

perform acts undeniably at odds with fundamental tenets of their religious beliefs."  406 U.S. at

218.

The Ninth Circuit went on to hold that "a government action that decreases the

spirituality, the fervor, or the satisfaction with which a believer practices his religion is not what

Congress has labeled a 'substantial burden'—a term of art chosen by Congress to be defined by

reference to Supreme Court precedent—on the free exercise of religion." *Navajo Nation*, 535

F.3d at 1063.  "Where . . .  there is no showing the government has coerced the Plaintiffs to act

contrary to their religious beliefs under the threat of sanctions, or conditioned a governmental

benefit upon conduct that would violate the Plaintiffs' religious beliefs, there is no 'substantial

burden' on the exercise of their religion." *Id.*  "The presence of recycled wastewater on the

Peaks does not coerce the Plaintiffs to act contrary to their religious beliefs under the threat of

sanctions, nor does it condition a governmental benefit upon conduct that would violate their

religious beliefs, as required to establish a 'substantial burden' on religious exercise under

RFRA." *Id.* at 1067.

The Ninth Circuit further explained why no other result is feasible:

> Were it otherwise, any action the federal government were to take,
> including action on its own land, would be subject to the personalized oversight of
> millions of citizens. ***Each citizen would hold an individual veto to prohibit the
> government action solely because it offends his religious beliefs, sensibilities, or
> tastes, or fails to satisfy his religious desires. Further, giving one religious sect
> a veto over the use of public park land would deprive others of the right to use
> what is, by definition, land that belongs to everyone***.
>
> "[W]e are a cosmopolitan nation made up of people of almost every
> conceivable religious preference." *Braunfeld v. Brown*, 366 U.S. 599, 606, 81 S.
> Ct. 1144, 6 L.Ed.2d 563 (1961). Our nation recognizes and protects the
> expression of a great range of religious beliefs. Nevertheless, respecting religious
> credos is one thing; requiring the government to change its conduct to avoid any
> perceived slight to them is quite another. No matter how much we might wish the
> government to conform its conduct to our religious preferences, act in ways that
> do not offend our religious sensibilities, and take no action that decreases our
> spiritual fulfillment, no government—let alone a government that presides over a
> nation with as many religions as the United States of America—could function
> were it required to do so. *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S.
> 439, 452, 108 S. Ct. 1319, 99 L.Ed.2d 534 (1988).

*Id.* at 1063-64 (emphasis added).

The Ninth Circuit reaffirmed its ruling in *Snoqualmie Indian Tribe v. Fed. Energy*

*Regulatory Comm'n*, 545 F.3d 1207 (9th Cir. 2008).  There, the plaintiff objected to the

relicensing of a hydroelectric power plant at Snoqualmie Falls near Seattle on grounds that it was a sacred site, specifically a place "to gather to pray, to meditate, to worship, and to renew their contact with their ancestors and their spiritual powers." *Id.* at 1211. Applying *Navajo Nation*, the court held that, after a searching review of the voluminous record, it found no "evidence demonstrating that Snoqualmie Tribe members will lose a government benefit or face criminal or civil sanctions for practicing their religion." *Id.* at 1214. "The Tribe's arguments that the dam interferes with the ability of tribal members to practice religion are irrelevant to whether the hydroelectric project either forces them to choose between practicing their religion and receiving a government benefit or coerces them into a Catch–22 situation: exercise of their religion under fear of civil or criminal sanction. " *Id.* Therefore, the relicensing did not "impose a substantial burden under RFRA on the tribal members' ability to exercise their religion." *Id.* at 1214-15.

Other cases from the Ninth Circuit have followed suit. In *La Cuna de Aztlan Sacred Sites Prot. Circle Advisory Comm. v. U.S. Dep't of the Interior ("La Cuna II")*, No. CV 11-00400 DMG, 2013 WL 4500572 (C.D. Cal. Aug. 16, 2013), the plaintiffs objected that they were unable to access certain portions of the Salt Song Trails, located on government land in Nevada, because of an eight-foot barbed wire fence that surrounded a site under construction for a solar power plant. They claimed that the Salt Song Trails have significant historical, cultural, and religious value to several Indian Tribes and that they would be subjected to criminal trespass violations if they entered the property. The court rejected that argument, holding that denial of access to land alone is insufficient to establish a RFRA claim:

> Under *Navajo Nation*, . . . ***denial of access to land, without a showing of coercion to act contrary to religious belief, does not give rise to a RFRA claim, regardless of how that denial of access is accomplished***. . . . Though Native Americans may have some rights to use sacred sites, "those rights do not divest the Government of its right to use what is, after all, its land." . . . ***Thus, sad as it may be that access to some parts of the Salt Song Trails will be impaired,***

> *Plaintiffs face no civil or criminal sanction for practicing their religion—the choice to use those parts of the Salt Song Trails is simply not available to them*.

*Id.* at *9 (quoting *Lyng*, 485 U.S. at 453) (emphasis added).

Similarly, in *S. Fork Band v. U.S. Dep't of Interior*, 643 F. Supp. 2d 1192 (D. Nev.), *aff'd in part, rev'd in part sub nom. S. Fork Band Council of W. Shoshone of Nevada v. U.S. Dep't of Interior*, 588 F.3d 718 (9th Cir. 2009), tribes brought a RFRA claim challenging BLM's decision to approve a mining project on public land, including Mt. Tenabo, which they claimed was a sacred site. After noting that "demonstrating a substantial burden on the exercise of their religion is high," the court found that the plaintiffs had failed to establish a *prima facie* case because there was no evidence that BLM's approval of the project (1) forced them to choose between following their religion and receiving a government benefit or (2) coerced them into violating their religious beliefs by threat of civil or criminal sanctions. *Id.* at 1208.

At least one other court in the country has reached the same result. In *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs.*, 239 F.Supp.3d 77 (D.C.C. 2017), the plaintiffs sought to block construction of an oil pipeline under the waters of Lake Oahe on grounds that the "mere existence" of the pipeline would "desecrate those waters and render them unsuitable for use in their religious sacraments." *Id.* at 82. The court denied injunctive relief, finding the government's actions did not create a "substantial burden" because it did not "impose a sanction on the Tribe's members for exercising their religious beliefs, [or] . . . pressure them to choose between religious exercise and the receipt of government benefits." *Id.* at 91. The court rejected the plaintiffs' claim that their inability to perform required religious sacraments at the lake constituted a "substantial burden." *Id.* The court observed that such an argument was "directly at odds with Supreme Court precedent," specifically *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988). *Id.*

In *Lyng*, the plaintiffs challenged the U.S. Forest Service's decision to build a six-mile paved road and permit timber foresting on government-owned land that was considered sacred to several tribes. 485 U.S. at 442. The plaintiffs claimed that the proposed road would "***physically destro[y]*** the environmental conditions and the privacy without which the [religious] practices cannot be conducted." *Id.* at 449 (emphasis added). The Supreme Court acknowledged that the government's actions "would interfere significantly with private persons' ability to pursue spiritual fulfillment according to their own religious beliefs" and "could have devastating effects on traditional Indian religious practices." *Id.* at 449, 451. Nevertheless, the court found no First Amendment violation because the affected individuals would not be "coerced by the Government's action into violating their religious beliefs" or "penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Id.* at 449.

Applying these cases, in particular *Lyng* and *Navajo Nation*, which are controlling Supreme Court and Ninth Circuit precedent, this court must similarly conclude that plaintiffs have failed to establish a *prima facie* case that their right to exercise religion has been substantially burdened. As in *Lyng* and *Navajo Nation*, plaintiffs contend that the sacred site at issue, which is located on federal land, has been desecrated and destroyed. Yet, as in those cases, plaintiffs have not established that they are being coerced to act contrary to their religious beliefs under the threat of sanctions or that a governmental benefit is being conditioned upon conduct that would violate their religious beliefs. Without these critical elements, plaintiffs cannot establish a substantial burden under the RFRA.

Plaintiffs contend that their case is distinguishable because it involves the actual destruction of their religious site. Plaintiffs argue that while *Sherbert* and *Yoder* involved

"indirect" burdens on religious exercise, their case involves a "direct" burden on their religious

beliefs because the site has been destroyed and thus they have been effectively "barred" from

entering it.  Pl. Resp. 33-34, ECF #292.

This argument is foreclosed by *Lyng*.  There the Supreme Court held that even assuming

that the government's actions would "***virtually destroy***" the Native Americans' "ability to

practice their religion . . . the Constitution simply does not provide a principle that could justify

upholding [their] legal claims." 485 U.S. at 451-52 (emphasis added).

> "Whatever may be the exact line between unconstitutional prohibitions on the free
> exercise of religion and the legitimate conduct by government of its own affairs,
> ***the location of the line cannot depend on measuring the effects of a***
> ***governmental action on a religious objector's spiritual development***,' even
> where the effect on religious practice is '***extremely grave***.'"

*Standing* Rock, 239 F.Supp.3d at 92 (quoting *Lyng*, 485 U.S. at 451) (emphasis added).

"Though Native Americans may have some rights to use sacred sites, 'those rights do not divest

the Government of its right to use what is, after all, its land.'"  *La Cuna II*, 2013 WL 4500572, at

*10 (quoting *Lyng*, 485 U.S. at 453).

Contrary to plaintiffs' claims, the Supreme Court's decision in *Lyng* still controls.  As the

Ninth Circuit observed in *Navajo Nation*, "[t]hat *Lyng* was a Free Exercise Clause, not RFRA,

challenge is of no material consequence."  535 F.3d at 1071 n.13.  "Congress expressly

instructed the courts to look to pre-*Smith* Free Exercise Clause cases, which include *Lyng*, to

interpret RFRA."  *Id.*; *see also Oklevueha Native Am. Church of Hawaii, Inc. v. Lynch*, 828 F.3d

1012, 1016 (9th Cir. 2016) (reiterating that the meaning of the term "substantial burden" under

the RFRA is defined by pre-*Smith* Supreme-Court case law).  Legislative history further

confirms that by enacting the RFRA, Congress did not intend to diminish the Supreme Court's holding in *Lyng*.[4]

Moreover, as the Ninth Circuit recently explained, a substantial burden does not exist where there is a "substitute" that is "capable of serving the exact same religious function." *Oklevueha*, 828 F.3d at 1017.  In *Oklevueha*, the plaintiffs practiced "peyotism" but considered cannabis, "in addition to peyote, to be sacred or most holy," and consumed it as a substitute for peyote.  *Id.* at 1014, 1016.  They sought declaratory and injunctive relief under the RFRA to prevent the government from prosecuting them under the Controlled Substances Act, 21 U.S.C. §§ 801–971.  In rejecting their claim, the Ninth Circuit noted that "nothing in the record demonstrates that a prohibition on cannabis forces [the plaintiffs] to choose between obedience to their religion and criminal sanction, such that they are being 'coerced to act contrary to their religious beliefs.'"  *Id.* at 1016 (quoting *Navajo Nation*, 535 F.3d at 1070).  The plaintiffs made "no claim that peyote is unavailable or that cannabis serves a unique religious function."  *Id.* at 1016.  Their "failure to demonstrate that the prohibition on cannabis puts them to such a choice is fatal to their claim."  *Id.*

Here, as federal defendants contend, "the A.J. Dwyer Scenic Area is not the only area in which [plaintiffs] can practice their religion.  Indeed, the entire Willamette Valley, as well as all

---

[4] As Senator Orin Hatch explained, the RFRA

> does not effect [sic] *Lyng* . . . , a case concerning the use and management of government resources, because, like *Bowen v. Roy*, the incidental impact on a religious practice does not "burden" anyone's free exercise of religion. In *Lyng*, the court ruled that the way in which government manages its affairs and uses its own property does not impose a burden on religious exercise. Unless a burden is demonstrated, there can be no free exercise violation.

139 Cong. Rec. S14461, at S14470 (daily ed. Oct. 27, 1993) (statement of Sen. Hatch); *see also id.* (statement of Sen. Daniel Inouye) (RFRA will not address "the circumstance in which Government action on public and Indian lands directly infringes upon the free exercise of a native American religion.").

of Mount Hood, is sacred to Plaintiffs, and they practice their religion at dozens of other sites."
Def. Mot. Partial Summ. J. 19 n.7, ECF #287.  But most importantly, as explained above, there is
no evidence that plaintiffs have been "coerced to act contrary to their religious beliefs by the
threat of civil or criminal sanctions." *Navajo Nation*, 535 F.3d at 1070.  They face no "forced
choice" or "Catch–22."  They are still able to access the site,[5] and there is no evidence that they
will be cited for trespass or suffer any government-imposed penalty for doing so.[6]  Thus, while
plaintiffs may raise important questions whether the decisions regarding the site were culturally
sensitive or the least destructive choice among various options, those factors do not establish a
substantial burden under the RFRA.

Plaintiffs' reliance on *Burwell v. Hobby Lobby*, 134 S. Ct. 2751 (2015), is also misplaced.
The Supreme Court's decision in *Hobby Lobby* does not change the analysis here.  The central
issue presented in *Hobby Lobby* was whether a corporation was a "person" under the RFRA and
whether a for-profit corporation could practice religion.  *Id.* at 2768-69.  After holding federal

---

[5] In their complaint, plaintiffs admit that the site is accessible through East Wemme Trail Road.
Fourth Am. Compl. ¶ 25, ECF #223.  East Wemme Trail Road is a graveled one-lane road that is
8-12 feet wide and runs in an east-west direction, forming a crescent shape in relation to U.S. 26.
ECF #292-11, at 148-49; *see also* Reply 15, ECF #295 (depicting aerial photo of East Wemme
Trail Road).  It served as a motor road for early automobilists who traveled to Mt. Hood for
recreation opportunities.  *Id.* at 149.

In his deposition, plaintiff Chief Wilbur Slockish testified that he visited the site when a
promotional video was filmed.  Dep. Chief Wilbur Slockish 54:21-25, 55:1-12, ECF #287-4; *see
also* Def. Mot. Partial Summ. J. 18 n.6, ECF #287 (containing link to video).  Federal
defendants' reply contains a still photograph from that video, depicting plaintiff Chief Johnny
Jackson at the site.  Reply 15, ECF #295.

Michael Jones testified at his deposition that he accessed the site in 2015 and 2016 by
driving down East Wemme Trail Road.  Dep. Michael Jones 92:2-21, ECF #287-7, at 24.  There
is a barricade at the end of East Wemme Trail Road where it dead-ends.  Jones testified that,
although it is "difficult," "you go around that."  *Id.* 120:5-7, ECF #287-7, at 31.  In sum, it is
clear from the deposition testimony and other evidence that the site can be accessed.

[6] In fact, it is the official policy of BLM to "accommodate access to and ceremonial use of Indian
sacred sites by Indian religious practitioners" on public lands.  *See* 61 Fed. Reg. 26771 (May 24,
1996).

restrictions on "activities of a for-profit closely held corporation must comply with RFRA," the Supreme Court applied the same analysis used in *Navajo Nation*.  *Id.* at 2775.  Because the contraceptive mandate at issue in that case "force[d]" the corporation to pay as much as $475 million per year in penalties if it failed to comply, it imposed a substantial burden on the corporation's beliefs.  *Id.* at 2779.

Plaintiffs contend that, in *Hobby Lobby*, the Supreme Court faulted the government for making the same "absurd" argument that federal defendants make here—"namely, that 'RFRA merely restored this Court's pre-*Smith* decisions' and therefore 'did not allow a plaintiff to raise a RFRA claim' unless it was the same sort of claim 'that this Court entertained in the years before *Smith*.'"  Pl. Resp. 37-38, ECF #292 (quoting *Hobby Lobby*, 134 S. Ct. at 2773).  Plaintiffs, however, take the language of the opinion out of context.  The Supreme Court used this language in deciding whether a for-profit corporation fell within the category of "persons" protected by the RFRA.  134 S. Ct. at 2773.  As federal defendants accurately contend, there is nothing in the *Hobby Lobby* opinion that eviscerated the RFRA's requirement of government coercion or compulsion.

Plaintiffs cite other cases, but they likewise do not support their claim that some test other than the coercion/compulsion standard should apply.  Most of the cases plaintiffs cite involve claims made under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5., not the RFRA.[7]  Because this is not a prisoner case, the RLUIPA

---

[7] *See, e.g.*, *Greene v. Solano Cty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008); *Yellowbear v. Lampert*, 741 F.3d 48, 51-52 (10th Cir. 2014); *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014).  Pl. Resp. 34-35, ECF #292.

does not apply and those cases are therefore inapplicable.[8]  The holdings in those cases

nevertheless do not change the outcome in this case.

Under the RLUIPA, "[n]o government shall impose a substantial burden on the religious

exercise of a person residing in or confined to an institution[.]"  42 U.S.C. § 2000cc–1(a).  The

"RLUIPA . . . protects institutionalized persons who are unable freely to attend to their religious

needs and are therefore dependent on the government's permission and accommodation for

exercise of their religion."  *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

In *Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005), the Ninth Circuit explained that

a substantial burden exists for purposes of the RLUIPA where a prison policy "intentionally puts

significant pressure on inmates . . . to abandon their religious beliefs" or "denies [an important

benefit] because of conduct mandated by religious belief."  *Id.* at 995-96 (citation omitted)

(brackets in original).  The court found that the plaintiff established a substantial burden where

he was subjected to multiple "punishments"—including being confined to his cell, forced to

work more hours, and expelled from classes—for refusing to comply with the prison's hair

grooming policy due to his religious beliefs.  *Id.* at 995-96.

Recently, in *Holt v. Hobbs*, 135 S. Ct. 853 (2015), the Supreme Court clarified that the

RLUIPA allows prisoners "to seek religious accommodations pursuant to the same standard as

set forth in RFRA."  *Id.* at 860.  The Court concluded that a corrections department's grooming

policy requiring the petitioner to shave his beard against his religious beliefs or "face serious

disciplinary action" constituted a substantial burden.  *Id.* at 862.

---

[8] In *Navajo Nation*, the plaintiffs also cited cases decided under the RLUIPA, which the Ninth Circuit likewise found were inapplicable.  535 F.3d at 1077.

As discussed at length above, plaintiffs have failed to establish the type of coercion illustrated in *Holt* or *Warsoldier*. Thus, even if the analysis in these RLUIPA cases applied, the outcome would be the same.

Moreover, prisoner cases under the RLUIPA are otherwise distinguishable from the type at hand for the reasons wisely articulated by the court in *Standing Rock*:

> The RLUIPA cases on which the Tribe relies, furthermore, offer little succor. Not only have inmates suffered a total loss of liberty, whereas the Tribe's members have not, but the cases cited involved either a specific prohibition on a particular form of religious exercise or the imposition of a sanction or other collateral, non-religious harm in response to religious exercise. . . . Here, although the Tribe's members may feel unable to use the water from Lake Oahe in their religious ceremonies once the pipeline is operational, there is no specific ban on their religious exercise, nor does performance of their sacraments trigger a sanction, loss of a government benefit, or other collateral harm. If a Jewish prisoner is denied kosher meals and adheres to his belief that he cannot consume non-kosher food, he will starve. If a Muslim prisoner forbidden from growing a beard nonetheless grows one, he will be punished. But if the Tribe persists in its belief that DAPL will render the waters of Lake Oahe spiritually impure, it suffers no collateral consequence. In so stating, the Court does not diminish the significance of such a loss; indeed, inability to engage in religious conduct may cause deep personal and communal harm. The point is simply that the prisoner cases to which Cheyenne River draws a comparison involve an additional harm beyond the spiritual that is not present here.

239 F.Supp.3d at 95-96. Therefore, this court should not look to the RLUIPA cases cited by plaintiffs in deciding this question, but instead to *Lyng* and *Navajo Nation*. Applying the holding in those cases, plaintiffs have failed to establish a *prima facie* showing that they were substantially burdened. Accordingly, federal defendants' motion for summary judgment against plaintiffs' Thirteenth Claim under the RFRA should be granted.

## II.    Standing

Federal defendants assert that, because plaintiffs have failed to establish that their right to exercise religion under the RFRA has been "substantially burdened," they lack standing. Def. Mot. Partial Summ. J. 26, ECF #287.

Federal courts are courts of limited jurisdiction.  "Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (quoting U.S. Const. art. III, § 2).  An "essential element" of the limitations on this court's jurisdiction is that "any person invoking the power of a federal court must demonstrate standing to do so."  *Hollingsworth*, 133 S. Ct. at 2661 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The "irreducible constitutional minimum of standing" requires the party invoking federal jurisdiction to establish three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (1992) (internal citations, ellipses, and quotation marks omitted). These are "not mere pleading requirements but rather an indispensable part of the plaintiff's case [and] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  *Id.* at 561 (citations omitted).

Here, by failing to establish a *prima facie* case under the RFRA, plaintiffs have failed to establish that they have suffered an injury in fact.  Thus, they lack standing on the RFRA claim, and it should be dismissed.

///

///

///

17 – FINDINGS AND RECOMMENDATIONS

### III.    Law of the Case

Plaintiffs contend that federal defendant's motion for summary judgment is foreclosed because of this court's prior rulings, which they contend are law of the case. That contention should be rejected for the reasons discussed below.

### A.    Doctrine of Law of the Case

"The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (*citing Lockert v. U.S. Dept. of Labor*, 867 F.2d 513, 518 (9th Cir. 1989). "Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court[.]" *Id.* The doctrine "concerns courts' general practice of refusing to reopen questions previously decided in the same case." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 601 (9th Cir. 1991). For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition." *Milgard*, 902 F.2d at 715.

However, the doctrine "is not a limitation on [the courts'] power." *Rent-A-Ctr.*, 944 F.2d at 602. It is an "equitable doctrine that should not be applied if it would be unfair." *Id.* Application of the doctrine is discretionary. *Milgard*, 902 F.2d at 715. A court properly exercises its discretion where (1) the first decision was clearly erroneous and would result in manifest injustice; (2) an intervening change in the law has occurred; or (3) the evidence on remand was substantially different. *Milgard*, 902 F.2d at 715 (citing *Eichman*, 880 F.2d at 157).

### B.    The Court's Prior Rulings and Analysis

In a February 7, 2012 order denying federal defendants' Motion for Judgment on the Pleadings (ECF #104), the court ruled as follows:

The Magistrate Judge distinguishes *Lyng* by pointing out that construction of the guardrail on Highway 26 prevents Plaintiffs from having any access to their religious site, and, in addition, religious artifacts at the site were destroyed. The Magistrate Judge concludes disputed fact exist as to whether Plaintiffs "may be forced to act contrary to their religious beliefs . . .[w]ithout the artifacts and free access to the site."

After reviewing the record de novo, the Court agrees with the Magistrate Judge and concludes there are disputes of fact that preclude the entry of summary judgment as to Plaintiffs' 13th Claim based on Plaintiffs' free exercise of religion under the First Amendment.

Opinion and Order (February 7, 2012), ECF #131, at 9-10.

The court's prior order pertained to a motion for judgment on the pleadings, where no evidence was presented and the court was permitted to consider only the allegations in the complaint. *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) ("A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, [a] party is entitled to judgment as a matter of law.") By contrast, the present motion before the court is one for summary judgment, and the proffered facts are "substantially different" from when the court issued its prior order in 2012. *Milgard*, 902 F.2d at 715. There is now evidence that plaintiffs have access to the site and do not suffer the threat of trespass[9] they argued existed

---

[9] In her Findings and Recommendations, Judge Stewart noted that plaintiffs claimed they would be subject to a trespass action if they attempted to access the site:

> Here, in contrast, plaintiffs allege that they cannot freely access the site because of a newly constructed guardrail and destruction of the artifacts themselves. [Second Am. Compl.], ¶ 50. In addition, plaintiffs also argue (but do not allege) that they would suffer criminal trespass should they attempt to access the site. Based solely on plaintiffs' allegations which are assumed to be true, this court cannot conclude as a matter of law that the Project has not substantially burdened plaintiffs' free exercise of religion. Without the artifacts and free access to the site, plaintiffs may be forced to act contrary to their religious beliefs. In addition, this court cannot ascertain whether the Federal Defendants took the least restrictive means for implementing the Project and whether they followed all appropriate procedures. As previously noted, fact issues also exist as to whether plaintiffs received procedural due process. Due to these fact issues that must be resolved in order to determine if the burden on plaintiffs' exercise of their religion

when the court's previous order was issued.  There are no longer those "disputes of fact" that the court was concerned with in 2012—the uncontroverted evidence is that BLM allows plaintiffs access to the site and that some of the plaintiffs have in fact visited the site.

Additionally, to the extent the court previously held that denial of access to land constitutes a substantial burden under the RFRA, that ruling is clearly erroneous.  "Under *Navajo Nation*, . . . denial of access to land, without a showing of coercion to act contrary to religious belief, does not give rise to a RFRA claim, regardless of how that denial of access is accomplished. . . ." *La Cuna II*, 2013 WL 4500572, at *9 (finding no substantial burden where eight-foot-high fence prevented tribe from accessing sacred site).  "Whatever rights the [Native Americans] may have to the use of the area, . . . those rights do not divest the Government of its right to use what is, after all, *its* land."  *Lyng*, 485 U.S. at 454 (emphasis in original).

With the trespass and access issues resolved, the only remaining basis for the court's prior ruling is the destruction of artifacts.  However, as discussed above, destruction of a sacred site is not enough to constitute a "substantial burden."  Even where the government's actions would "virtually destroy" a group's "ability to practice their religion . . . the Constitution simply does not provide a principle that could justify upholding [their] legal claims."  *Lyng*, 485 U.S. at 451-52; *see also Navajo Nation*, 535 F.3d at 1070 (holding desecration of spiritual mountain with sewage effluent containing fecal coliform bacteria did not impose a substantial burden).  "[T]he diminishment of spiritual fulfillment—serious though it may be—is not a 'substantial burden' on the free exercise of religion."  *Id.* at 1070.  A recent case decided by the Ninth Circuit in 2013—after the court issued its previous order—cements this conclusion.  In *Oklevueha*, the

---

is substantial, the Federal Defendants' motion to dismiss the Thirteenth Claim should be denied.
Findings and Recommendations (Sept. 21, 2011) 17, ECF #122.

court made clear that a substantial burden does not exist where there is a "substitute" that is "capable of serving the exact same religious function." 828 F.3d at 1017. Here, plaintiffs concede that the site at issue "is part of a complex of sacred, interrelated and interconnected sites in the Mount Hood area."[10] Fourth Am. Compl. ¶ 13, ECF #223. The court in *La Cuna II* considered a similar scenario and concluded there was no substantial burden: "[S]ad as it may be that access to some parts of the Salt Song Trails will be impaired, Plaintiffs face no civil or criminal sanction for practicing their religion—the choice to use those parts of the Salt Song trails is simply not available to them." The same result is compelled in this case.

For these reasons, the court should decline to apply the law of the case doctrine and find, as discussed above, the plaintiffs have failed to establish a *prima face* case under the RFRA.

## IV.    Laches

Federal defendants argue that plaintiffs are alternatively barred from asserting this claim under the doctrine of laches. It is unnecessary to reach this issue because plaintiffs' claim is foreclosed by their failure to establish a *prima facie* case under the RFRA, as discussed above.

///

///

///

---

[10] Plaintiffs' complaint alleges:

> In addition to Mount Hood itself, these other sites include, but are not limited to, Enola Hill, Owl Mountain, Zig Zag Mountain, Hunchback Mountain, Huckleberry Mountain, Salmon River Butte, North Mountain, Crutcher's Bench, Flag Mountain, Big Laurel Hill, Buzzard's Butte, Wolfe Butte, Devil's Peak, Devil's Backbone, Bear Creek, Indian Meadow, Cedar Ridge, Alderwood, the Meadows (Rhododendron Meadow and the Big Island), the Big Deadening, Devils Half Acre, Barlow Pass, Summit Prairie, Red Top Meadow, Salmon River Canyon, Alder Mountain, McIntire Mountain, Sandy River Canyon, Veda Butte, Plaza Butte, Bull Run, the Wind Mountains, and Tom, Dick, and Harry Mountain.

Fourth Am. Compl. ¶ 13, ECF #223.

## RECOMMENDATIONS

For the reasons set forth above, federal defendants' motion for summary judgment against Claim 13 (ECF #287) should be GRANTED, plaintiff's cross-motion for summary judgment (ECF #294) should be DENIED, and plaintiff's Thirteenth Claim should be dismissed.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Friday, March 16, 2018.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED this 2nd day of March, 2018.


_____
        /s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge