UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

HEREDITARY CHIEF WILBUR
SLOCKISH, et al.,

    Plaintiffs,

  v.

UNITED STATES FEDERAL HIGHWAY
ADMINISTRATION, et al.,

    Defendants.

Case No. 3:08-cv-01169-YY

OPINION AND ORDER

YOU, Magistrate Judge:

 Before the court is plaintiffs' Motion for Discovery on their Thirteenth Claim, in which they allege that the Federal Highway Administration ("FHWA"), Bureau of Land Management ("BLM"), and Advisory Council on Historic Preservation (collectively the "federal defendants") have interfered with their free exercise of religion in violation of the First Amendment of the United States Constitution. ECF #319.[1] For the reasons discussed below, plaintiffs' motion is DENIED.[2]

---

[1] The parties dispute whether the entire Thirteenth Claim was dismissed or whether just the portion pertaining to the Religious Freedom and Restoration Act ("RFRA") was dismissed. For purposes of this motion, the court assumes, but does not decide, that the Free Exercise portion of the Thirteenth Claim remains viable.

[2] "Pretrial discovery matters are considered non-dispositive, and Magistrate Judges therefore possess authority to enter orders resolving discovery disputes." *United States v. Hansen*, 233 F.R.D. 665, 669 (S.D. Cal. 2005).

1 – OPINION AND ORDER

## LEGAL STANDARD

FRCP 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FRCP 26(b)(2)(C), however, requires the court to "limit the frequency or extent of discovery otherwise allowed" if it determines that (1) the discovery is unduly cumulative or duplicative or can be obtained more easily from another source, (2) the party seeking the discovery has had ample opportunity to obtain the information by discovery in the action, or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

## DISCUSSION

Plaintiffs seek discovery related to (1) federal defendants' justification for constructing a 3:1 slope; (2) federal defendants' hostility towards plaintiffs' religious practices; (3) and the necessity of the project and whether there were other alternatives that would have allowed the highway widening without destroying the sacred site. Plaintiffs additionally seek to depose BLM archeologist Frances Philipek.

### I.     Justification for 3:1 Slope

Plaintiffs argue that they are "entitled to additional discovery to probe the Government's justification" for constructing a 3:1 slope rather than a steeper 1.5:1 slope or retaining wall. Pl. Mot. Disc. 9, ECF #319. Plaintiffs also argue that they are "entitled to additional discovery to probe the Government's justification for choosing to build on the north side of the highway rather than building to the south." *Id.* at 10.

The court "must limit the frequency or extent of discovery" if it determines that "the discovery sought is unreasonably cumulative or duplicative." FRCP 26(b)(2)(C). The administrative record in this case is voluminous, consisting of thousands of pages. Evidence of

the agency's justification for how and where it expanded the highway would necessarily be cumulative and duplicative of the administrative record, given that the justification for the agencies' decisions is precisely the content of such records. In addition to the extensive administrative record in this case, defendants also responded to interrogatories and produced additional documents, and plaintiffs conducted depositions of agency staff. Order, ECF #277; Graham Dep. 5, ECF # 292-27.

Moreover, plaintiffs have had ample opportunity to obtain the information by discovery in this action. FRCP 26(b)(2)(C). Federal defendants provided the administrative record to plaintiffs years ago, in 2010, and supplemented it in 2011. Admin. Records ECF #85; Suppl. Admin. Records, ECF #90. To the extent plaintiffs believe that justification for the project was not fully explained in the administrative record, they have had many years to address any ambiguities or deficiencies.

The court further notes that in 2011, plaintiffs sought discovery under the Free Exercise claim, and the court held that such discovery was unnecessary because discovery under the Native American Graves Protection and Repatriation Act ("NAGPRA") would involve the same information. *See* Findings & Recommendation 29-30, ECF #154, *adopted* by Order, ECF #171. Plaintiffs contend that, at that time, they were seeking discovery about the religious significance of the sacred site; however, plaintiffs argue they are now seeking discovery about whether federal defendants' actions were neutral and generally applicable. Pl. Reply 2-3, ECF #323. The fact that plaintiffs sought discovery on some aspects of the Free Exercise claim in 2011 calls into question why plaintiffs waited seven years to seek discovery on this aspect of the Free Exercise claim, and serves as further evidence that plaintiffs had ample opportunity to obtain such information.

In their reply, plaintiffs contend that federal defendants chose to use a 3:1 slope in order to protect wetlands, and that such "privileging of secular resources over similarly situated religious resources is precisely the sort of non-neutrality that the Free Exercise Clause prohibits." Pl. Reply 17, ECF # 323 (citing *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S.Ct. 1719, 1731-73 (2018); *Church of Lukumi Babalu Aye, Inc. v. Hialeah ("Lukumi")*, 508 U.S. 520, 535-38, 542-47 (1993). However, neither case cited by plaintiffs deals with privileging secular resources over similarly situated religious resources. Rather, both cases dealt with situations in which certain behaviors were permissible if done for secular reasons, but not if done for religious reasons. *Masterpiece*, 138 S.Ct. at 1730-31 (Colorado Civil Rights Commission allowed bakers to refuse to make cakes due to secular "conscience-based objections" but not religious based objections); *Lukumi*, 508 U.S. 520, 545 (city ordinance allowed the slaughter of animals for commercial purposes but not for religious purposes). Plaintiffs also cite a Third Circuit case; however, that case also centered on a behavior that was permissible if done for a secular reason, but not if done for a religious reason. *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 360 (3rd Cir. 1999) (police department offered a medical exemption which allowed officers to wear beards but did not allow a religious exemption).

The Supreme Court has explained that the "[f]actors relevant to the assessment of governmental neutrality include 'the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body.'" *Masterpiece*, 138 S.Ct. at 1731 (quoting *Lukumi*, 508 U.S. at 540). Much, if not all, of the evidence pertaining to those factors would necessarily be contained

within the administrative record. Plaintiffs also have available to them the responses to interrogatories and depositions of agency staff. Accordingly, further discovery regarding the 3:1 slope and placement of the highway is barred by FRCP 26(b)(2)(C) because, as discussed above, it would be cumulative and plaintiffs have had an ample opportunity to obtain such information.

## II.     Hostility

Plaintiffs additionally seek evidence related to federal defendants' alleged hostility towards their religious practices. Plaintiffs allege that there is evidence of hostility because the BLM archeologist noted "[n]o cultural features or objects that are clearly historic or prehistoric were observed in the area" and concluded that the "rock cluster" had no "other associated objects or features such that it could be identified as a cultural resource." Philipek Rep., ECF #292-35. The fact that the archeologist made this observation, however, does not evidence hostility.

Plaintiffs also cite a May 2008 call log that purportedly shows BLM officials were alerted that the site was sacred to tribal members. Even accepting plaintiffs' assertion as true, mere knowledge of religious practices does not constitute hostility to such religious practices.

Plaintiffs further allege that in the 1990s an engineer for the Oregon Department of Transportation ("ODOT") referred to the sacred alter as a "pile of stones" and complained that they were preventing the widening of the highway. Jones Dep. 65, ECF #292-4. A single comment made by one engineer, years before federal defendants began the process for this project is not the kind of hostility contemplated in *Masterpiece*. *See* 138 S.Ct. at 1731. In *Masterpiece*, the Supreme Court noted that the commissioners made "official expressions of hostility to religion" and the "hostility surfaced at the Commission's formal, public hearings." *Id.* at 1729, 1732. The commissioners further referred to the plaintiff's "faith as 'one of the most despicable pieces of rhetoric that a person can use'" and compared the plaintiff's

"invocation of his sincerely held religious beliefs to defenses of slavery and the Holocaust." *Id.* at 1729. Importantly, the commissioners in *Masterpiece* were the ultimate decisionmakers in that administrative process. Here, it does not appear, and plaintiffs have not argued, that the engineer was a decisionmaker on the highway expansion project. Without more, this court will not open the door to a fishing expedition for potential evidence of hostility.

### III. Necessity of the Project and Alternatives

Plaintiffs seek evidence demonstrating that the current highway plan was not necessary to accomplish any safety goals and federal defendants had other alternatives that would have allowed the highway widening and construction to occur without destroying the sacred site. This is simply another attempt to "probe" federal defendants' justification for the project. As discussed above, to the extent plaintiffs believe that federal defendants' justification for the project was not fully explained, they have had years to resolve any deficiencies in the record, and to the extent federal defendants' justification is fully explained, there is no need to further "probe" it.

### IV. Deposition of BLM Archeologist Frances Philipek

In their reply, plaintiffs argue for the first time that they should be allowed to depose the BLM archeologist Frances Philipek. As a preliminary matter, the court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)). Plaintiffs' argument also fails on the merits. Plaintiffs argue that they wanted to depose Philipek as part of the RFRA discovery but were unable to, allegedly because federal defendants "hampered" discovery. Pl. Reply 16, ECF #323. However, if plaintiffs believed that federal defendants obstructed a deposition of Philipek during discovery for the RFRA claim, the time to address such purported

obstruction has passed, given that this court has already ruled on the RFRA claim. Although plaintiffs' may feel that they missed an opportunity to depose a witness that they view as important, Philipek submitted her conclusions in 2008, and plaintiffs have "had ample opportunity to obtain the information by discovery in the action." FRCP 26(b)(2)(C)(ii).

## CONCLUSION

As discussed above, plaintiffs are not entitled to any of the requested additional discovery because all it is either cumulative or they have had ample opportunity to obtain it. FRCP 26(b)(2)(C). Because federal defendants prevail on this motion, it is unnecessary to address the additional arguments they have asserted.

## ORDER

For the reasons set forth above, plaintiffs' motion (ECF #319) to allow discovery on plaintiffs' Thirteenth Claim under the Free Exercise Clause is DENIED.

DATED this 10th day of October, 2018.

/s/ Youlee Yim You
_____
Youlee Yim You
United States Magistrate Judge